**INDEPENDENT BANKERS ASSOCIATION OF NEW YORK STATE INC. and The Canandaigua National Bank and Trust Company, Plaintiffs,**

v.

**MARINE MIDLAND BANK, N.A. and Wegman's Food Markets, Inc., Defendants.**

**No. CIV–83–1006T.**

United States District Court, W.D. New York.

Dec. 2, 1983.

Greisberger, Zicari, McConville, Cooman & Morin, P.C., Rochester, N.Y. (Kevin S. Cooman, Rochester, N.Y., of counsel), for plaintiffs.

Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., and Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y. (Michael R. Wolford, Rochester, N.Y., and Paul K. Stecker, Buffalo, N.Y., of counsel), for defendants.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

Plaintiffs, the Independent Bankers Association of New York State, Inc. and The Canadaigua National Bank and Trust Com-

pany have brought the present action against Marine Midland Bank, N.A. ("Marine Midland"), a federally chartered institution, for alleged violation of Section 36 of the National Banking Act, 12 U.S.C. Section 36, and against Wegman's Food Markets, Inc. ("Wegman's"), the owner of a chain of supermarkets in the western New York area, for alleged violation of Section 131 of the New York Banking Law. Defendant Wegman's now moves pursuant to F.R.Civ.P. 12(b)(1) to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. For the reasons set forth below, Wegman's motion is denied.

## FACTUAL BACKGROUND

This action arises out of the operation of an automated teller machine ("A.T.M.") at the Wegman's supermarket in Canandaigua, New York. An A.T.M. is, in essence, a computer terminal located at the supermarket through which a customer can process various transactions with his or her bank. One of the banking institutions which utilizes Wegman's A.T.M. is defendant, Marine Midland.

The complaint alleges that Marine Midland's participation in the A.T.M. arrangement at Wegman's in Canandaigua constitutes "branch banking" as defined in 12 U.S.C. Section 36(f).[1] Because the federal statute in question applies only to national banks, no violation of 12 U.S.C. Section 36 has been or could be alleged against Wegman's. Rather, plaintiffs have brought a second claim against Wegman's alleging a violation of Section 131 of the New York Banking Law, which generally prohibits unauthorized banking in New York.[2]

The question presented on this motion is whether this Court should exercise pendent jurisdiction over the state law claim against Wegman's, a party not otherwise subject to jurisdiction under the federal claim alleged.

## I.

■ In order to evaluate whether jurisdiction over Wegman's in this case is proper, a two-fold inquiry must be made: (1) whether this Court has the judicial power to decide the state law claim against Wegman's and (2) assuming such power exists, whether this Court should, in the exercise of its discretion, decline plaintiffs' invitation to adjudicate the state law claim. *Leather's Best Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 809 (2nd Cir.1971). If the judicial power to hear such a pendent party claim does not exist, there is no need to proceed further and Wegman's motion must be granted.

### A. Judicial Power to Hear a Pendent Claim

In *Osborn v. Bank of the United States,* 9 Wheat 738, 6 L.Ed. 204 (1824) Chief Justice Marshal wrote: "When a question to which the judicial power of the union is extended by the Constitution, forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts jurisdiction of that case, although other questions of fact or law may be involved in it." *Id.* at 823, 6 L.Ed. 204. Although this concept of pendent jurisdiction was born in the early part of the 19th Century, it has proved a troublesome concept to apply. In *Hurn v. Oursler,* 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), the Supreme Court introduced the "cause of action" test for determining pendent jurisdiction holding that pendent jurisdiction could be exercised over two distinct grounds, one state and one federal, which were presented in support of a single cause of action, but could not do so where the

1. Once it is established that branch banking has occurred, 12 U.S.C. Section 36 then defers to state law as to whether such branching is permitted. Plaintiffs contend that under New York law Marine Midland would not be permitted to conduct such activities in Canandaigua.

2. New York Banking Law Section 131 states in pertinent part: "... no corporation, domestic or foreign, other than a national bank or a federal reserve bank, unless expressly authorized by the laws of this state, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, receiving for transmission or transmitting money in any manner whatsoever ...".

**1428**

state claim was itself a distinct and separate cause of action. Finally, in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1976) the court abandoned this "unnecessarily grudging" approach and formulated a new test to determine when a district court possessed the judicial power to exercise jurisdiction over a pendant state claim.

> Pendant jurisdiction, in the sense of judicial power, exists whenever there is a claim "arising under [the] Constitution, the laws of the United States, and treaties made or which shall be made, under their authority ...," U.S. Const., Art. III, Section 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case". The Federal claim must have substance sufficient to confer subject matter jurisdiction on the court .... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.* at 725, 86 S.Ct. at 1138.

■ Applying this test to the facts presently before me, I conclude that the *Gibbs* test of constitutional power to hear the state claim has been satisfied. The "nucleus of operative fact" here concerns the operation of the A.T.M. machine at the Canandaigua Wegman's store. In order to decide both the state and federal claims, the Court will have to fully explore what transactions are conducted through the A.T.M., who benefits from these transactions and a variety of other common questions of fact. Thus, leaving aside for the moment the question of the pendant-party, I conclude that the entire action before this Court comprises one constitutional "case".

**B.  Power to Subject a Pendant Party Claim to Federal Jurisdiction**

Beyond those issues addressed in *Gibbs*, this case involves the additional "subtle and complex question ... of whether the doctrine of pendant jurisdiction extends to confer jurisdiction over a party as to whom no independent basis of federal jurisdiction exists".[3] After *Gibbs*, the Second Circuit, in two separate decisions, held that where the *Gibbs* test of constitutional power under Article III was met, the absence of federal jurisdiction over one of the parties to the state claim did not deprive the court of pendant jurisdiction over that claim. *See Astor-Honor, Inc. v. Grosset & Dunlap, Inc.*, 441 F.2d 627 (2nd Cir.1971); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2nd Cir.1971). To hold otherwise, Judge Friendly wrote in *Astor-Honor*, "would be an unjustifiable waste of judicial and professional time—indeed, a travesty on sound judicial administration ...". 441 F.2d 629, 630; *See also, Schulman v. Huck Finn Inc.*, 472 F.2d 864, 866 (8th Cir.1973).

In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) the Supreme Court had an opportunity to extensively address the issue of pendant-party jurisdiction. In that case, the plaintiff brought a federal civil rights claim against certain county officials and joined with it a state law claim against the county, asking the court to exercise pendant jurisdiction over the latter. The Supreme Court held that the district court could not exercise jurisdiction over the state law claim. The court, however, declined to address the constitutional issue, but instead decided the case as a matter of statutory construction.

The basis of the district court's jurisdiction in *Aldinger* was 28 U.S.C. Section 1343 and 42 U.S.C. Section 1983 which at that time, prior to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), was construed to prohibit suits against municipalities. Thus, the court in *Aldinger*

**3.** *Aldinger v. Howard*, 427 U.S. 1, 2–3, 96 S.Ct. 2413, 1415, 49 L.Ed.2d 276 (1976).

reasoned, whether or not the district court had the constitutional power to hear the claim, the jurisdiction conferring statute could not be read to allow the court to exercise pendent jurisdiction over a party specifically excluded by Congress from Section 1983 liability. The court noted, however, that different circumstances may bring a different result and concluded:

> Two observations suffice for the disposition of the type of case before us. If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Article III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Id.* 427 U.S. at 18, 96 S.Ct. at 2422.

Since *Aldinger*, several lower courts have held that a federal court lacks the Constitutional power to exercise pendent jurisdiction over a party not otherwise subject to the jurisdiction of the court. *See Shields v. Consolidated Rail Corporation*, 530 F.Supp. 400 (S.D.N.Y.1981); *Lincoln Manufacturing Co., Inc. v. Stern*, 515 F.Supp. 21 (N.D.Ill.1981).

■ However, *Aldinger*, has neither expressly nor by implication overruled what I think is the better view expressed by the Second Circuit in *Astor-Honor* and *Leathers Best*, and which has been adopted by three of the other circuits since *Aldinger*, that under the right circumstances, a federal court does indeed have the power under Article III to exercise pendent party jurisdiction. *See North Dakota v. Merchants National Bank and Trust Company*, 634 F.2d 368 (8th Cir.1980); *Boudreaux v. Puckett*, 611 F.2d 1028 (5th Cir.1980); *Transok Pipeline Co. v. Darks*, 565 F.2d 1150 (10th Cir.1977), *cert. denied*, 435 U.S.

1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *De Maio v. Consolidated Rail Corp.*, 489 F.Supp. 315 (S.D.N.Y.1980); *Ford Motor Company v. Wallenius Lines*, 476 F.Supp. 1362 (E.D.Va.1979). Because I have concluded that the *Gibbs* test has indeed been met in this case I hold that the constitutional power to hear the pendent state claim against Wegman's does exist.

### C. Construction of 12 U.S.C. Section 36 in Light of Aldinger

Although a district court does have the inherent constitutional power under Article III to hear a pendent party claim, it remains to be decided whether the federal statute *involved in this case*, 12 U.S.C. Section 36, in conjunction with 28 U.S.C. Section 1331, expressly or by implication negates the existence of jurisdiction over Wegman's on the state law claim. *See Aldinger v. Howard*, 427 U.S. at 18, 96 S.Ct. at 2422; *Jong-Yul Lim v. International Institute of Metro. Detroit*, 510 F.Supp. 722 (E.D.Mich.1981); *Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568 (N.D.N.Y.1979).

■ The scope and legislative history of the McFadden Act, 12 U.S.C. Section 36, was exhaustively investigated in *Independent Bankers Association of America v. Smith*, 534 F.2d 921 (D.C.Cir.1976). A review of that decision, and legislative history explored therein, clearly indicates that Congress' intent in enacting the McFadden Act was to "reserve for the states the control and regulation of branching by state and national banks". *Id.* at 932. Thus, the McFadden Act effectively limits the branching of a national bank to areas where branching is permitted under state law.[4] This was done to promote equality between state and national banking institutions. *Id.*

■ Nothing in the legislative history of the McFadden Act, suggests that this Court's adjudication of the pendent state

---

**4.** The definition of what "branch banking" is, however, is a question of federal law. See 12 U.S.C. Section 36(f); see *First National Bank in*

*Plant City v. Dickinson*, 396 U.S. 122, 133–134, 90 S.Ct. 337, 343, 24 L.Ed.2d 312 (1969).

law claim involved would be repugnant to the intent of that legislation. Quite to the contrary, because the McFadden Act itself defers to state banking law to establish where and when branch banking is permitted, it is entirely consistent with the overall intent of the Act to simultaneously adjudicate other state banking law questions which derive from a "common nucleus of operative facts".

In summary, I hold that this Court has both the constitutional and statutory power to exercise pendant party jurisdiction over Wegman's on the plaintiffs' state banking law claim. What remains is the determination of whether, in this Court's discretion, it should exercise such jurisdiction.

## II.

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) the court recognized that pendant jurisdiction need not be exercised in every case where it is found to exist. The court noted: "It has consistently been recognized that pendant jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them ...." *Id.* at 726, 86 S.Ct. at 1139.

In this case, as I have stated above, an analysis of both the state and federal claims will require the same factual determination of what the A.T.M. is, what it does, and for whom. Although the ultimate standards applied to these facts may differ somewhat under the state and federal claims, judicial economy dictates that the fact finding occur in a single proceeding. Moreover, convenience and fairness to litigants would also be fostered by this Court's exercise of jurisdiction over the state banking law claim enabling the entire case to be heard in an expeditious manner in one forum.

Accordingly, this Court having the power to exercise pendant party jurisdiction over

Wegman's and the state banking law claim alleged in plaintiffs' complaint, has decided in its discretion that it should do so. Wegman's motion to dismiss is denied.

SO ORDERED.