Terence P. NEILAN, on behalf of himself and all others similarly situated, Plaintiffs,

v.

VALUE VACATIONS, INC., David Kols d/b/a Value Vacations, Northwestern National Insurance Company, Connecticut National Bank, Arrow Airways and Southeast Bank, N.A. d/b/a Southeast National Bank, Defendants.

No. 84 Civ. 6672–CLB.

United States District Court, S.D. New York.

March 8, 1985.

Thomas A. Dickerson, New York City, for plaintiffs.

Robert Keilson and Clayton P. Knowles, Jr., New York City, for defendants Northwestern National Ins. Co., David Kols and Value Vacations, Inc.

Erskine D. Henderson, Skadden, Arps, Slate, Meagher & Flom, New York City, for Connecticut National Bank.

George Berkowitz, P.C., New York City, for defendant Arrow Airways.

Darrell Fennell, Owen & Fennell, New York City and Alvin B. Davis, Miami, Fla., for defendant Southeast Bank, N.A.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff commenced this class action originally in New York State Supreme Court in August, 1984. On September 17, 1984, defendant Connecticut National Bank ("CNB") removed the action to this Court pursuant to 28 U.S.C. § 1441(a) based on a federal question and diversity. All of the defendants except David Kols have filed cross-claims against one another.

By motion dated January 9, 1985, which was argued and fully submitted as of January 28, 1985, defendants Southeast Bank ("SEB") and Arrow Airways ("Arrow") move this Court to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted or, in the alternative, to remand the action to the state court.

Plaintiff's claims arise out of the alleged default by Value Vacations Inc. ("Value") which "stranded" Mr. Neilan and other passengers who had contracted with Value

for charter travel services. According to the complaint and as represented to the Court by counsel at oral argument, Value was in the business of selling travel services as a Public Charter Tour Operator. These services included primarily air transportation for which Value would enter into bulk purchase contracts with air carriers for flights to be performed on certain dates. In this case, Value contracted with Arrow for such flights and then marketed them, directly and through travel agents, to consumers. Mr. Neilan and the customers of Value he seeks to represent as a class allegedly lost their prepayments for charter flights which were never delivered. The complaint alleges that the actions of all of the defendants violated federal regulations governing public charter operations. In addition there are pendent state law claims pleaded, sounding in breach of contract, breach of fiduciary duties, conversion, and violation of New York General Business Law §§ 349, 350, *et seq.*

In order to understand the interrelationship of the named defendants, it is necessary to consider pertinent federal regulations promulgated under the Federal Aviation Act ("FAA"), 49 U.S.C. § 1301 *et seq.* These regulations in substance require a "tour operator" such as Value to file with the Civil Aeronautics Board ("CAB") a prospectus, a surety bond, and a depository agreement executed by a federally insured bank. 14 C.F.R. §§ 380.25, 380.34 (1984). The regulations also govern the terms of the contract between the tour operator and passengers, and require that the consumer payments be deposited into escrow accounts from which the bank may pay the air carrier only fixed amounts at fixed dates referent to the date of the flight(s). 14 C.F.R. §§ 380.32, 380.34(b)(2), 380.35 (1984). Thus the depository bank or banks assume the duties of escrowee pursuant to complex CAB regulations, our description of which has been greatly abbreviated. According to the FAA, this regulatory scheme was established "in order to protect travelers and shippers by aircraft operated by (charter operators)." 49 U.S.C. § 1371(n)(2).

Against this background, it appears that CNB and SEB both acted as depository banks pursuant to federal law. Arrow contracted with SEB in order to comply with CAB rules concerning the deposit of customer prepayments to Arrow for air transportation. Value contracted with CNB for the same purpose of compliance. In the Value-CNB agreement (Public Charter Depository Agreement dated February 28, 1983), CNB agreed to disburse funds from its escrow account to Arrow's depository bank, SEB. It is alleged that CNB disbursed funds to SEB for scheduled charter flights that were subsequently cancelled, but that neither SEB nor Arrow has refunded these funds to CNB. CNB currently holds a stake of approximately $600,000.00 which it is willing to refund to the proper plaintiffs. (Hearing Transcript, January 23, 1985, p. 17). Value appears to be insolvent.

Defendant Northwestern National Insurance Company ("Northwestern") acted as a guarantor or surety of Value's contracts with its customers, issuing a bond in the amount of $200,000.00 as required by the FAA, 49 U.S.C. § 1371(n)(2) and by CAB regulation, 14 C.F.R. § 380.34(b)(1). The importance of the claims against the several defendants becomes clear when the amount of the bond is compared to claimed damages which are in excess of two million dollars.

Although the disputed liabilities of the defendants other than Northwestern constitute the real grievances pleaded by Neilan for himself and the proposed consumer class, the instant motion to dismiss or remand requires resolution first of jurisdictional issues as to which the claim against Northwestern possesses great significance. The Court must determine whether it has federal subject matter jurisdiction before it entertains a motion to dismiss based upon Rule 12(b)(6), F.R.Civ.P. for failure to state a claim. If there is no jurisdictional power to hear the case, it would be improvident for the district court to enter final judgment for the defendant on the ground that plaintiff has failed to state a claim only to

have it determined upon appeal that plaintiff has stated a claim but that it is a nonfederal cause of action which belongs in state court. *See generally,* 14 C. Wright & A. Miller, Fed.Prac. & Procedure § 3739 at 757–63 (1976). Furthermore, the removal statute dictates remand rather than dismissal in such a case: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case. . . ." 28 U.S.C. § 1447(c). Thus the issue before the Court is whether there is federal subject matter jurisdiction over any of plaintiff's claims, and more specifically, whether there is pendent or ancillary jurisdiction over nonfederal claims or nonfederal defendants.

The removal petition asserts that this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1332. Reliance upon § 1331 raises the problem, discussed below, of whether the FAA confers a private right of action for plaintiff on the facts pleaded. Section 1332 might have supported removal since the plaintiff and all of the defendants appear to be diverse, but the ten thousand dollar requirement is absent. Although the complaint seeks over ten thousand dollars in damages, these damages represent an aggregate of the proposed class injuries; Mr. Neilan's damages amount to only a few hundred dollars. Under the rule of *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), this does not satisfy the jurisdictional amount for diversity suits.

■ There does exist one clear jurisdictional grant applicable to this case. Section 1352 of Title 28 provides that "[t]he district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title." As plaintiff is suing on the required statutory bond issued by Northwestern to Value, a bond which states that it "shall inure to the benefit of any and all charter participants to whom [Value] may be held legally

liable," plaintiff's "Third Cause of Action" could have been filed originally in federal court. Since 28 U.S.C. § 1352 would have provided original federal subject matter jurisdiction, removal would be proper under 28 U.S.C. § 1441(a). The problem with relying on § 1352 is that it embraces one federal claim against only three of the named defendants, Value, Northwestern, and Kols d/b/a Value. A suit on the bond does not relate automatically to defendants SEB, CNB and Arrow. Therefore we face the issue of whether plaintiff, having federal subject matter jurisdiction over Northwestern, Value and Kols pursuant to § 1352, can also assert nonfederal claims arising out of related events against nonfederal parties in one federal court action by means of ancillary or pendent party jurisdiction.

When and how a federal judicial forum can entertain state law claims which are pendent or ancillary to a federal claim presents an intricate query. Add to this the question of whether the principles governing pendent jurisdiction extend to "confer jurisdiction over a party as to whom no independent basis of federal jurisdiction exists" and you have a "subtle and complex question with far-reaching implications." *Aldinger v. Howard,* 427 U.S. 1, 2–3, 96 S.Ct. 2413, 2415, 49 L.Ed.2d 276 (1976).

Before the Supreme Court's decision in *Aldinger,* the law in this Circuit held clearly that a district court had the power to hear a state claim against a party not liable on the federal claim, provided that the "common nucleus" test of *United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) was satisfied. *See generally Leather's Best v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir.1971); *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.,* 441 F.2d 627 (1971); and *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83 (S.D.N.Y.1974). In *Leather's Best* the Court of Appeals held that a plaintiff properly in federal court by virtue of admiralty jurisdiction could litigate a factually related state tort claim against an additional defendant pier operator or warehouseman who was named

only with respect to the state claim. This conclusion rested on the identical nature of the facts underlying the state and federal claims, what the *Gibbs* Court had referred to in a now familiar phrase, "common nucleus of operative fact." 451 F.2d at 809–811. The *Leather's Best* opinion also reasoned by analogy from the federal court's ancillary jurisdiction to hear compulsory counterclaims and third-party claims pursuant to Rules 13(a) and 14(a), F.R.Civ.P., *id.* at 809–11, because no purpose would be served for a district court to dismiss a nonfederal defendant if that same party thereafter could be impleaded properly under Rule 14.

However, in *Aldinger v. Howard, supra,* the Supreme Court cast considerable doubt on the rule of the Second Circuit. *Aldinger* held that in the context of a Title 42 § 1983 civil rights action, no pendent or ancillary jurisdiction exists as to a defendant who would not otherwise be a party in federal court to the federal question claim. Conceding that the principles governing pendent jurisdiction and ancillary jurisdiction had been, in effect, bridged by the Court's decision in *Moore v. N.Y. Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), together with adoption of the kind of "transactional" test enunciated in *Gibbs,* the *Aldinger* Court nevertheless declined to exercise the kind of pendent or ancillary party jurisdiction that previously had developed in the lower courts.

The opinion in *Aldinger* asserts two separate reasons for refusing to permit pendent party jurisdiction in the case before it. First, the court stated that the addition of a nonfederal party against whom plaintiff can assert only a nonfederal claim "would run counter to the well established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." 427 U.S. at 15, 96 S.Ct. at 2420. Distinguishing the approved jurisdiction over pendent *claims,* from jurisdiction over pendent or ancillary *parties,* the Court stated:

"The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But is is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.'" *Id.* at 14, 96 S.Ct. at 2420.

Thus while *Gibbs* and its predecessor cases were consistent with the Constitution's Article III grant of judicial power, those cases did not involve the additional question presented in *Aldinger*—"whether a nonfederal claim could *in turn* be the basis for joining a party over whom no independent federal jurisdiction exists, simply because that claim could be derived from the 'common nucleus of operative fact' giving rise to the dispute between the parties to the federal claim." *Id.* at 9, 96 S.Ct. at 2418.

Accordingly, the *Aldinger* standard now requires this Court to evaluate whether it has the constitutional power to exercise pendent party jurisdiction. In *Gibbs,* where a nonfederal *claim* was at issue, one constitutional "case" existed; in *Aldinger,* where the addition of a nonfederal *party* complicated the issue, the Supreme Court considered the situation "both factually and legally different."

For its second reason, the Supreme Court in *Aldinger* stated that the exercise of pendent party jurisdiction must also be

judged by "whether by virtue of the statutory grant of subject matter jurisdiction, upon which [plaintiff's] principal claim against the [federal defendant] rests, Congress had addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." *Id.* at 16, 96 S.Ct. at 2421. In *Aldinger,* Congress had addressed itself to this subject and had excluded the defendant, Spokane County, as a municipality, from the "persons" answerable in a § 1983 suit such as the one filed by Aldinger.[1] In the face of this kind of negative Congressional intent, pendent party jurisdiction could not be asserted. The Court's second reason in *Aldinger* for refusing pendent party jurisdiction, applicable where there is a discernible statutory direction that requires a court to refrain from using its constitutional power even where it would seem available under the *Gibbs* test, was amplified further in *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). There the Court again emphasized the statutory limits on federal court jurisdiction, stating that "[c]onstitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy." *Id.* at 372, 98 S.Ct. at 2401. The limiting statute in *Owen Equipment* was a jurisdictional statute, 28 U.S.C. § 1332. The court held that the district court had no jurisdiction over a plaintiff's independent state law claim against a nondiverse third party defendant. To permit plaintiff to circumvent the requirement of complete diversity "would simply flout the congressional command." *Id.* at 377, 98 S.Ct. at 2404.

Since the decisions in *Aldinger* and *Owen Equipment,* some district courts of

this Circuit have continued to find that pendent party jurisdiction is proper in a variety of cases. In *Independent Bankers Association of New York State Inc. v. Marine Midland Bank, N.A.,* 575 F.Supp. 1425 (W.D.N.Y.1983) Judge Telesca considered both reasons asserted in *Aldinger* inapplicable to his case, and found that "under the right circumstances, a federal court does indeed have the power under Article III to exercise pendent party jurisdiction." *Id.* at 1429 (citations omitted). Concluding that the statute which created the federal banking law claim involved in the *Independent Bankers* case, 12 U.S.C. § 36, did not evidence Congressional intent to negate jurisdiction over the nonfederal defendant against whom a state banking law claim had been asserted out of the same nucleus of fact, Judge Telesca concluded that exercise of pendent party jurisdiction was proper. Thus the Court obtained subject matter jurisdiction over plaintiff's federal allegations under the National Bank Act against the federally chartered Marine Midland Bank, as well as plaintiff's state law claim against the owner of a chain of supermarkets which had acted in concert with the national bank and in violation of parralled state regulations, but was a party not otherwise subject to federal jurisdiction.

Similarly in *DeBellas v. United States,* 542 F.Supp. 999 (S.D.N.Y.1982), and in *Maltais v. United States,* 439 F.Supp. 540 (N.D.N.Y.1977), the courts assumed pendent party jurisdiction on the theory of a common nucleus over nonfederal claims and nonfederal parties in suits to recover for personal injuries brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* and 28 U.S.C. § 1346(b). In *DeBellas,* the court relied largely on the fact that

---

**1.** In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), plaintiff had been discharged from her job in the Spokane County treasurer's office. She filed suit in federal district court against the County treasurer, Howard, his wife, other county commissioners, and the county itself. At the time of the Supreme Court's decision, existing law held that local governments were not amenable to suit under 42 U.S.C. § 1983. *Monroe v. Pape,* 365 U.S. 167,

187–91, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961). Since that time, *Monroe v. Pape* has been overruled by *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, *Monell* in no way qualified *Aldinger's* holding that the within jurisdictional questions are "statutory as well as constitutional." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372–73, n. 12, 98 S.Ct. 2396, 2401–02 n. 12, 57 L.Ed.2d 274 (1978).

the federal forum is exclusive as to tort claims against the United States, and that the defendant United States Government had filed cross claims against the building contractors, nonfederal defendants, charged with negligence arising out of a common nucleus. *Aldinger* was distinguished at least in part in that Congress was said to have authorized impleader by the Government of such nonfederal parties. *Id.* 542 F.Supp. at 1006. See *Sorrentino v. United States,* 344 F.Supp. 1308, 1309 (E.D.N.Y.1972). The rationale of *Maltais* and *Sorrentino* is essentially to the same effect.

In *DeMaio v. Consolidated Rail Corp.,* 489 F.Supp. 315 (S.D.N.Y.1980), another personal injury action, this one instituted in federal court by a railroad employee suing his employer under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.,* Judge Knapp of this Court held that pendent party jurisdiction could be asserted over the operator of a taxi hired by the railroad, a non-diverse defendant against whom the plaintiff had brought state law claims for negligence. *Aldinger* was distinguished solely on the second ground, the Court finding no congressional intent to preclude trying the entire controversy in a federal forum. *But see Shields v. Consolidated Rail Corp.,* 530 F.Supp. 400 (S.D.N.Y.1981) (Motley, J.) (FELA action, no pendent party jurisdiction exists as to non-diverse party on a purely state law claim, where railroad's motor truck collided with another vehicle injuring railroad employee).

As a final example of district court decisions, in *United States v. Bedford Associates,* 491 F.Supp. 848 (S.D.N.Y.1980), *aff'd in part, rev'd in part on other grounds,* 657 F.2d 1300 (2d Cir.1981), *cert. denied* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982), a real property dispute between the Government and its lessor of office space, presented circumstances warranting pendent party jurisdiction. There the Bowery Savings Bank, an intervening plaintiff mortgagee, was permitted to assert subject matter jurisdiction over the United States pursuant to 28 U.S.C. §§ 2409a and 1346(f) pleading a claim to quiet title. In addition the Bank was permitted in the same suit to foreclose against the owners of the property, although no independent basis for federal jurisdiction existed as to the property-owner defendants.

The Court of Appeals for the Second Circuit has not had occasion to rule directly on the post-*Aldinger* status of pendent party jurisdictional principles, except under a limited set of circumstances involving pendent plaintiffs. In *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir.1982), *cert. denied* — U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), the court noted in *dictum* that *Aldinger's* holding was limited to cases brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). In *Weinberger* the pendent party issue was not only outside the context of a § 1983 case, but it also involved a principal claim under the Securities Exchange Act of 1934, of which the federal courts have exclusive jurisdiction. 698 F.2d at 76. Clearly this is the strongest case for retaining ancillary jurisdiction over a nonfederal party since the exclusivity prohibits a plaintiff from suing all the defendants in state court, and as a consequence presents risks of duplication, issue preclusion, or inconsistent results. *See* 15 U.S.C. § 78aa. Plaintiffs in *Weinberger* also alleged state common law violations arising out of the common nucleus, but some plaintiff class members had purchased the securities prior to the class period, and therefore lacked a federal claim necessary for pendent claim jurisdiction. Since the same state law claims were already before the federal court as pendent claims of other class member plaintiffs who did purchase during the class period, and because the federal claims could be resolved *only* in the federal court, the court stated that "the circumstances here are about as powerful for the exercise of pendent party jurisdiction as can be imagined. The exclusivity of federal jurisdiction ... makes a federal court the only one where a complete disposition of federal and related state claims can be rendered." 698 F.2d at 76. To make the case even stronger for the assertion of pendent party jurisdiction,

the facts in *Weinberger* involved the addition of a new group of pendent *plaintiffs*, not defendants. Thus, there was no concern that a party not otherwise amenable to suit in federal court would be forced unwillingly to defend in that forum. *Id.* at 77.

In addition to *Weinberger*, one other appellate decision has mentioned the impact of the *Aldinger* rule upon the former rule of *Leather's Best, supra*. In *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir.1977), the court found that jurisdiction over a dispute about the distribution of settlement funds could be sustained under traditional principles of ancillary jurisdiction, but that *Aldinger* had cast doubt on the limits of pendent jurisdiction. "While the Court's negative answer in *Aldinger* was specifically limited to cases in which federal jurisdiction was based solely on a civil rights claim brought under 42 U.S.C. § 1983, the decision makes it difficult to determine in which situations joinder of pendent parties should be permitted." *Id.* at 844 (footnote omitted).

This Court's analysis of the current state of the law in this Circuit does not persuade it that *Leather's Best* has in fact survived *Aldinger* and *Owen Equipment*. However, we need not resolve this difficult question, because here it appears that plaintiff cannot even satisfy the initial threshold of *Leather's Best* by defining a common nucleus of operative fact under the *Gibbs* test.

If plaintiff were to use § 1352 as his principal basis for federal subject matter jurisdiction, that statute would permit litigation of the travel customers' claims (the "nucleus") against the surety, Northwestern, and its principal, Value. *See Irving Trust Co. v. Nationwide Leisure Corp.*, 95 F.R.D. 51, 60 (S.D.N.Y.1982). However, the pendent state law claims pleaded are based upon a theory that the defendant banks, SEB and CNB, owed some duty to the travel customers. This is quite remote from the nucleus.

In the case of SEB, the Court cannot understand how the customer-plaintiffs have any state law claim for relief against a depository bank which contracted only with the air carrier, Arrow. The SEB-Arrow contract, filed with the CAB, expressly rules out the creation of any third-party beneficiary rights. Although plaintiff contends that the banks were fiduciaries who mishandled the escrow accounts, unsupported allegations of fiduciary relationship, without more, will not state a claim for relief against SEB by customers who were not in privity with either the bank or Arrow. If there is no duty running from the banks to the plaintiffs, then, *a fortiori*, there can be no breach. And if the duty arises only from the escrow, not from the surety bond, then where is the commonality of nucleus?

Neither do the third-party practice rules provide any easy answer to this dilemma. SEB insists that it owes no duty to indemnify Northwestern and that SEB could not be impleaded by Value or Northwestern on a tort theory of contribution. Even assuming that the travel customers could frame a state law claim against the banks and Arrow, clearly it would not derive from the same nucleus of operative facts needed to prove the suit on the bond.

In the federal suit plaintiffs would seek to prove that Value breached its duties to its customers, converting their money and/or failing to deliver the agreed upon flights or other travel services. In the allegedly pendent state claims for relief, plaintiffs would seek to prove that the depository banks somehow breached a contract term or a federal regulation governing the transfer of funds among the escrow accounts and to the airline. These two suits do not depend upon an identity of underlying facts; nor do they together constitute "one constitutional case" within the meaning of *Gibbs*.

■ Having concluded that 28 U.S.C. § 1352 would not authorize federal subject matter jurisdiction over all of the defendants named in the complaint, we turn to plaintiff's next argument in opposition to remand. Plaintiff contends that he is properly in federal court due to "arising under"

jurisdiction, 28 U.S.C. § 1337 in conjunction with 49 U.S.C. § 1371(n)(2). This Court agrees.

The precise question of whether there is a private right of action under this section of the FAA was addressed in *Bratton v. Shiffrin*, 585 F.2d 223 (7th Cir.1978), *vacated and remanded* 443 U.S. 903, 99 S.Ct. 3094, 61 L.Ed.2d 871 (1979), *reaffirmed on remand* 635 F.2d 1228 (7th Cir.1980), *cert. denied* 449 U.S. 1123, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). In the Seventh Circuit's initial opinion in *Bratton*, written for the court by Judge Leonard P. Moore of the Second Circuit who was sitting by designation, it was held that plaintiff travelers do have an implied remedy for damages under § 1371(n)(2) of the FAA. Like the present case, *Bratton v. Shiffrin* was brought by a group of individual travelers against the charter tour operator, the depository bank, and the surety. As here, plaintiffs alleged that the depository bank violated the FAA and the CAB regulations by mismanaging funds collected from travel customers. And as here, the bank had insufficient funds in its accounts to refund monies to the many travelers who claimed to have prepaid for cancelled charter tours. Judge Moore found that Congress had not provided an explicit cause of action to remedy violations of the nature alleged, but that plaintiffs could enforce compliance with the CAB regulations by implication. 585 F.2d at 228. In reaching this conclusion, the court considered the four factors of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Applying these factors to the FAA suit, the court found that (1) the statute was enacted to provide adequate security arrangements for the "especial benefit" of travelers such as the plaintiffs; (2) although silent on the question, Congress did not intend to deny private enforcement of the charter regulations; (3) implication of a private remedy in this one small part of the FAA ("the single goal of which is to assure relief to a traveler whose travel plans are thwarted") would be consistent with the underlying purposes of the statute; and (4) the matter of adherence of federal CAB regulations was not

one traditionally relegated to state law. This Court cannot improve on Judge Moore's analysis.

Upon review in the United States Supreme Court, the *Bratton* case was remanded with directions to consider the decision further in light of *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), which had refused to imply a private remedy from § 17(a) of the Securities Exchange Act of 1934. The Seventh Circuit thereafter reconsidered its decision and adhered to its prior opinion per Judge Moore, that Congress had intended "to provide an enforceable remedy to individual air charter travelers against insolvent tour operators by providing compensation for their loss from a financially responsible third party." 635 F.2d at 1230 (Swygert, J.). In this second opinion, the court focused specifically on the issue of Congressional intent, the touchstone of both *Touche Ross, supra,* and *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and explained why it had found a positive implication in favor of a private cause of action. Following the second opinion in *Bratton*, the Supreme Court declined to grant *certiorari.* 449 U.S. 1123, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).

SEB argues that in the Second Circuit no private right of action can be implied because of the Court of Appeals decision in *Caceres Agency, Inc. v. Trans World Airways*, 594 F.2d 932 (2d Cir.1979). *Caceres* declined to find an implied private right of action in favor of *travel agents*, not travelers like Bratton, who sought damages under § 1374(b) of the FAA because of alleged preferential commissions paid by defendant airlines to other travel agents. That provision of the FAA has the purpose of preventing discrimination against the traveling public, and passengers have been permitted to sue air carriers thereunder. *See, e.g., Fitzgerald v. Pan American World Airways, Inc.*, 229 F.2d 499 (2d Cir. 1956); *Karp v. North Central Air Lines, Inc.*, 583 F.2d 364 (7th Cir.1978); *Archibald v. Pan American World Airways,*

*Inc.,* 460 F.2d 14 (9th Cir.1972); *Mahaney v. Air France,* 474 F.Supp. 532 (S.D.N.Y. 1979). However, that section was not enacted for the benefit of travel agents such as the plaintiffs in *Caceres* and, accordingly, their complaints were dismissed.

Although *Caceres* concerned itself only with § 1374(b) of the FAA, SEB relies upon the following portion of the *Caceres* opinion to support its position that no private right of action may be implied under FAA § 1371(n)(2):

> "Even if section [1374(b)] could be so construed as to include travel agents among its beneficiaries, there is no indication of a congressional intent to give them a private right to recover damages for violations of the section. The only provision in the Act authorizing a private action is in section 1007(a), 49 U.S.C. § 1487(a). That section authorizes any party in interest to apply to a district court for the enforcement of section 401(a), 49 U.S.C. § 1371(a), which prohibits persons from engaging in air transportation without a C.A.B. certificate. The C.A.B. or the Federal Aviation Administration initiates, pursuant to section 1007(a), all enforcement proceedings for other violations of the Act. Congress having thus specifically prescribed the remedies it deems appropriate, courts should not alter the congressional design with remedies of their own choosing." 594 F.2d at 933 (citations omitted).

Under SEB's interpretation, literally "all enforcement proceedings" other than applications under § 1487(a) must be initiated by the administrative agency.[2] This Court believes that the far reaching dictum in *Caceres* cannot be taken literally as a definitive ruling that travelers may not sue in federal court under § 1371(n), this especial-

ly in light of the citation of *Fitzgerald, supra* with approval in *Caceres* at p. 933.

Since the Supreme Court's decision in *Touche Ross,* and more recently in *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the pivotal issue in implying a private right of action is whether Congress so intended. As is fully explained in the successive opinions of Judge Moore and Judge Swygert in *Bratton v. Shiffrin,* this particular subchapter of the FAA has as its foundation a consumer protection policy, and Congress intended to give rights to consumers who had suffered from tour operator defaults. 635 F.2d at 1232. It appears clear to this Court that the purpose of the statute's required depository bank system is to provide for independent banking institutions to account for consumer deposits and keep them segregated as to flight and destination, thereby removing the risk of defaulting tour operators or airlines. The role of the banks is to give the public assurance that the tour operator and the air carrier, or their creditors attaching general assets, will not misappropriate or divert consumer advance payments for services to be rendered in the future.

If the federal regulations had been adhered to, it would logically follow that a total escrow deposit would exist which, together with the surety bond, would equal amounts prepaid by consumers who never received flights, and who have not received a refund from a travel agency. Taking plaintiff's allegations as true, there is no such financial support available, and the plaintiff class members were injured as a direct result of the de-

---

**2.** So many cases have involved litigation of the private right of action issue under discrete portions of the Federal Aviation Act that we cannot perceive the existence of such a blanket prohibition as that suggested by defendant here. *See, e.g., In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400 (9th Cir.1983) (no private remedy under the FAA for wrongful death); *Chumney v. Nixon,* 615 F.2d 389 (6th Cir.1980) (FAA creates private right of action against air-

line for failing to prevent assault by passenger); *Diefenthal v. CAB,* 681 F.2d 1039 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983) (no private remedy under FAA for challenge to airline's smoking regulation); *Danna v. Air France,* 463 F.2d 407 (2d Cir.1972) (FAA creates no private right to challenge fare discrimination absent prior CAB ruling on the fare practice).

fendants' failure to comply with the closely regulated system of fund transfers prescribed by the FAA and the CAB. This states a claim for relief under a central theory of nonadherence to the federal regulatory scheme, a scheme promulgated under an Act of Congress which requires supplemental air carriers to post a performance bond or equivalent security arrangement "in order to protect travelers ... to be conditioned upon such supplemental air carrier's making appropriate compensation to such travelers...." Plaintiff class of travelers clearly belong to the class for whose benefit Congress enacted this portion of the FAA and to whose benefit inure the related CAB regulations. Under the reasoning and authority of *Bratton v. Shiffrin, supra,* plaintiffs here have an implied federal right of action against Value, Kols, SEB, CNB and Arrow, as well as the statutory surety, Northwestern.

Accordingly, defendants' motion to dismiss the complaint, or in the alternative to remand the action to the state court, is denied. All of the pending motions to dismiss cross-claims by any defendant are denied. Having assumed federal question jurisdiction under 49 U.S.C. § 1371(n)(2) and 28 U.S.C. § 1337, this Court has subject matter jurisdiction over all of the defendants and over any pendent state law claims arising out of the conduct alleged to have violated federal law. As a final matter of judicial discretion, the Court finds that it would be more efficient for one court to resolve issues as to the respective rights and liabilities of the six defendants, all of whom are answerable in the action for damages implied under the FAA.

■ The only other outstanding motion is plaintiff's motion for class certification which is granted for the following reasons: The requirement of numerosity is satisfied because CNB has stated to the Court that it already has received over eight thousand individual claims. The named plaintiff's claims are typical of the class in that he paid for travel services and did not receive them. We agree with defendants that the class definition must be narrowly drawn in order to limit recovery to travelers who received neither a refund nor adequate substitute travel services. However, this foreseeable variation in the facts surrounding some of the individual claims does not defeat the commonality of legal and factual questions concerning the applicable CAB regulations and whether their alleged violation injured the plaintiff class, which latter issues predominate. Although individual damages may differ, the issues concerning the duties and obligations owed by the defendants are common to the class. The Court finds that these common questions unite the class and that, furthermore, the relatively small size of the individual claims also makes the class action device superior to other methods for litigating the aggregate amount of damages sustained by the class members and owed by one or more of the defendants.

The class shall consist of all persons who contracted with Value Vacations, Inc. and/or its agents for the delivery of charter air transportation and other travel services which were to have been delivered on or about August 10, 1984 and on various subsequent dates up to and including January 1, 1985, and which were not delivered, in whole or in part by any airline, and for which no full refunds have been paid.

A formal order defining the class consistently with the foregoing, providing for notice and an opportunity to opt out, and containing such other provisions which may be deemed appropriate, shall be settled on five (5) days notice.

Counsel shall appear for a status and scheduling conference on April 18, 1985 at 9:30 A.M. in Courtroom 705.

So Ordered.