**Paul F. McDONALD, Plaintiff,**

v.

**PIEDMONT AVIATION, INC., Defendant.**

**No. 84 Civ. 8262 CLB.**

United States District Court, S.D. New York.

Jan. 6, 1986.

John G. McDonald, Rhinebeck, N.Y., for plaintiff.

Charles C. Read, Diane Patrick, O'Melveny & Myers, New York City, for defendant.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this action for damages and injunctive relief brought under 28 U.S.C. §§ 1331 and 1332, plaintiff Paul F. McDonald alleges that the defendant Piedmont Aviation, Inc. violated § 43 of the Airline Deregulation Act of 1978, 49 U.S.C. § 1552, by refusing to give hiring preference to the plaintiff as the statute purportedly would require. Defendant has moved to dismiss or, alternatively, to stay this action pending resolution of an unrelated case pending in the District Court of the District of Columbia, discussed below.

Section 43, entitled "Employee Protection Plan," comprises two related but discrete

provisions: the first provides for monthly support payments by the Government to eligible airline workers who had been dislocated by airline deregulation, while the second imposes a duty upon the airline industry to give preferential hiring consideration to those dislocated employees in order to obviate the need for the Government assistance. It is under this second provision that plaintiff claims his private right of action arises.

In pertinent part, this subsection reads as follows:

"(d)(1) Each person who is a protected employee of an air carrier which is subject to regulation by the Civil Aeronautics Board who is furloughed or otherwise terminated by such an air carrier (other than for cause) prior to the last day of the 10-year period beginning on October 24, 1978 shall have first right of hire, regardless of age, in his occupational speciality, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this title prior to October 24, 1978. Each such air carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except that such air carrier may recall any of its own furloughed employees before hiring such a person." 49 U.S.C. § 1552(d)(1).

McDonald's claim arises out of Piedmont's decision in 1981 to hire airline personnel, specifically pilots, who allegedly did not qualify as "protected employees" to whom preferential hiring treatment was due under § 43. A protected employee, as defined by the statute, is a person other than a corporate director or officer who had been employed by a certified air carrier for at least four years prior to October 24, 1978. 49 U.S.C. § 1552(h)(1).

In November 1981, following the cessation of Air New England where he had been employed as a pilot for at least seven years, McDonald applied to Piedmont for employment as a pilot. He identified himself as a protected employee. One month later, in December 1981, Piedmont hired a class of pilots consisting entirely of persons who, McDonald alleges, were not protected employees. Finally refused employment in May 1982, McDonald brings this action in an effort to enforce a "first right of hire" contained in § 43 that he contends Piedmont is statutorily obligated to honor.

The defendant moves to dismiss this action on two grounds. Piedmont first argues that § 43 does not create a private right in the plaintiff as a rejected applicant to enforce the statute by injunctive or monetary relief, and that consequently his complaint fails to state a claim upon which relief can be granted. Piedmont also argues that whatever rights § 43 conferred had not ripened at the time McDonald filed his complaint in November 1984 because the Department of Labor regulations intended to implement the statute have not yet been put into effect.

It is clear that this statute contains no express authorization of a private right of action by a person injured by a violation of § 43. Nevertheless, there remains for consideration whether a private remedy should be inferred from the language of the statute and Congressional intent.

Our inquiry begins with analysis of the statutory language itself, *see Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), applying the criteria set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). If this language fairly implies a right to specific and limited relief in federal court, no additional investigation into Congressional intent would be required. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979) (construing § 215 of the Investment Advisors Act).

In our analysis of the statutory language to ascertain Congressional intent, we must consider three factors: (1) whether the statute was enacted for the especial benefit of the class seeking private enforcement, *see Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 837, 78 L.Ed.2d 645 (1984); *Cannon v. University of Chi-*

*cago,* 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979); *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087; (2) whether the language relied upon creates a right or imposes a duty, or instead merely proscribes or directs certain conduct, *see Universities Research Association, Inc. v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Touche Ross, supra* 442 U.S. at 569–71, 99 S.Ct. at 2485–86; and (3) whether the statute sets forth adequate mechanisms for enforcement and relief so as to obviate any need for private enforcement, *see Daily Income Fund, supra* 104 S.Ct. at 837; *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981).

The first and second factors are usually examined together and are given great weight. As the Supreme Court observed in *Cannon* when it held that Title IX created a private remedy:

> "With the exception of one case, in which the relevant statute reflected a special policy against judicial interference, this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case." *Cannon, supra,* 441 U.S. at 690, n. 13, 99 S.Ct. at 1954 n. 13 (citations omitted); *see Universities Research Association, supra* 450 U.S. at 773, n. 23, 101 S.Ct. at 1462 n. 23.

By its terms, § 43 establishes a "first right of hire" and identifies the persons upon whom the right is conferred. *See* 49 U.S.C. § 1552(d)(1). Without a remedy there is no right. Under *Cannon,* therefore, a private right of action may fairly be inferred from the statute absent other language that specifies particular, exclusive mechanisms for enforcing those rights. *See Daily Income Fund, supra* 104 S.Ct. at 837; *Middlesex Sewerage Authority, supra* 453 U.S. at 13, 101 S.Ct. at 2622.

Scrutiny of the "Employee Protection Plan," codified at 49 U.S.C. § 1552, reveals no legislative scheme of enforcement that would either refute the implica-tion of the right-giving language quoted above or obviate the need for it by furnishing an alternative remedy that would serve adequately the legislative purpose. *See Daily Income Fund, supra* 104 S.Ct. at 837. Although Congress authorized the Department of Labor to "issue, amend, and repeal such rules and regulations as may be necessary for the administration of this section," 49 U.S.C. § 1552(f)(1), this language cannot be construed to provide the "express statutory remedies" that the Supreme Court would require in order to deny this plaintiff private enforcement of his conferred right. *See Daily Income Fund, supra* at 837. Where, as here, it is apparent that Congress granted a class of persons certain specific rights and is silent on the question of whether those rights should be enforced by private action, a private remedy may be implied by the courts unless the legislative history shows an explicit purpose to deny such enforcement. *See Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956, quoting *Cort v. Ash,* 422 U.S. 66, 67, 82, 95 S.Ct. 2080, 2082, 2089, 45 L.Ed.2d 26 (1975); *Neilan v. Value Vacations, Inc.,* 603 F.Supp. 1227, 1235 (S.D.N.Y.1985). The legislative history underlying § 43 contains nothing that negates implication of a private right of action. It focuses primarily upon the monthly payment assistance program designed to assist dislocated airline workers in their transition to new employment. *See* S.Rep. No. 631, 95th Cong., 2d Sess. 113–17 (1978). Discussion of the preference hiring requirement was confined to two sentences that reiterated the carrier's duty to hire. *Id.* at 116. Although Congress did not discuss the mechanics of enforcement, its purpose in enacting § 43 is clear, and a private remedy would be necessary to effectuate that purpose. To the extent that a private remedy is "at least helpful to the accomplishment of the statutory purpose," the courts have been decidedly receptive to its implication under the statute. *See Cannon,* 441 U.S. at 703, 99 S.Ct. at 1961 (citations omitted). Accordingly, this Court concludes that the language of § 43 will support a private

right of action, and as a result, the complaint does state a claim upon which relief can be granted.

■ The Court now turns to Piedmont's second contention supporting its motion to dismiss. Piedmont argues that the existence of an enforceable right under § 43 depends entirely on the promulgation by the Department of Labor of rules and regulations designed to implement the program, as contemplated by § 1552(f). It argues that the statute, without more, is inadequate to permit the subject air carriers to satisfy their preferential hiring obligations under the Act and that accordingly it may be inferred that Congress intended to make the private enforcement of statutory rights contingent upon the issuance of elaborative regulations. Although this statute goes back to 1978, there are still *no* regulations. Proposed final regulations implementing § 43 were published in the Federal Register on November 22, 1983, 48 Fed.Reg. 52,854, 52,861 (1983), and again on December 27, 1985, 50 Fed.Reg. 53,094, 53,101 (1985) (to be codified at 29 C.F.R. § 220.01, *et seq.*), these have not been put into effect, although whenever bureaucrats are given an opportunity to make rules, they usually do so. Piedmont argues that because there are as yet no rules in effect, McDonald's rights under the statute, if any, have not yet matured.

This argument has no merit. The argument assumes that bureaucrats in the Executive Branch, by their mere inaction in failing to adopt regulations or by involving themselves in an interminable tug-of-war over minutiae to be contained therein, could put off indefinitely (seven years in this case) the effectiveness of a scheme or remedy adopted by Congress that the President did not veto. Such an assumption may not be made lightly. In any event, the adoption of regulations is hardly necessary to the enforcement of § 43 of the Act. As noted earlier, the statute delineates unambiguously the rights and duties of the parties and identifies specifically to whom they should apply. *See* 49 U.S.C. § 1552(d)(1), (h)(1). The instruction by Congress to the Department of Labor to propose interpretive regulations for the entire Act does not diminish the right-giving force of the statutory language itself; nor could any such regulation dilute or repeal such rights, central as they are to the statutory scheme. Indeed, the rules published in December 1985, but not yet adopted, offer little guidance. *See* 50 Fed.Reg. at 53,101 to 53,105 (to be codified at 29 C.F.R. §§ 220.01–.51). The proposed 1985 regulations are silent as to the mechanism for enforcing the right of hire. They do provide a limited administrative appeal for ascertaining eligibility in the event of a dispute by an employee who "disagrees with the carrier's final determination under § 280.25 that he or she is not a protected employee" 50 Fed.Reg. 53,103–53,104 (to be codified at 29 C.F.R. § 220.-26). Without the regulations, the language of § 43 is sufficiently clear to alert those air carriers who survived deregulation of their responsibilities, without the necessity of further action pursuant to the rule making power of the Department of Labor. The proposed 1985 regulations themselves support this conclusion, by expressly providing that "nothing in these regulations shall preclude the exercise of statutory rights and duties between October 24, 1978 and the effective date of these regulations." 50 Fed.Reg. 53,102 [to be codified at 29 C.F.R. § 220.01(g)]. The Department, referring explicitly to this Act, later uses substantially the same language in making the same point. *See id.* at 53,105 [to be codified at 29 C.F.R. § 220.50(c)].

Piedmont relies on other language in the proposed 1983 regulations to support its position, specifically where the Department, in defining scope, announced that "only those employees who are expressly granted a hiring preference under the Act and these regulations have any rights under the Rehire Program." *Id.* at 53,102 [to be codified at 29 C.F.R. § 220.03(a)]. Even if we assume for the argument that the class of eligible protected employees may be smaller if these regulations or similar ones are adopted than it was before, McDonald will still be within the class, and this Court declines to infer from language

in regulations not yet adopted that no rights exist at all until adoption. Indeed, the Department's reaffirmation of the employees' statutory rights as recited above forbids such a conclusion.

Accordingly, Piedmont's motion to dismiss this action on this additional ground is denied.

Having concluded that this action is properly before the court, and that the complaint states a claim, we now consider defendant's motion to stay this action pending resolution of *Alaska Airlines Inc., et al. v. Donovan,* 594 F.Supp. 92 (D.C.Dist. Col.1984).

■ In exercising its discretion to stay an action before it in favor of a case in another court, a court must be motivated by considerations of judicial economy, fundamental fairness and the orderly administration of justice. Ordinarily, a court would not be justified in holding in abeyance a later-filed action such as this one unless the parties and issues of the concurrent actions are substantially identical. *See Kistler Instrumente A.G. v. PCB Piezotronics,* 419 F.Supp. 120, 123 (W.D.N.Y. 1976). Defendant here contends that the New York and District of Columbia cases are substantially identical in all matters except the parties. Further, it avers that the plaintiff will not be prejudiced by deferring to the District of Columbia action because the issues of concern to McDonald will be adjudicated fully and his interests protected in the other case; moreover, the threat of duplicative litigation will be averted.

■ The identity of these actions is not particularly significant and would not justify staying this action as defendant requests. Plaintiffs in *Alaska Airlines* allege that the first right of hire provision of § 43 violates due process. While this allegation invites judicial construction of the entire statute, the significant portion of the complaint there is directed against the regulations to be promulgated under the statute. Thus, the *Alaska Airlines* case differs substantially from this action by Mc-

Donald, who grounds his claims firmly and solely on the specific language of the statute itself, independent of any interpretative regulations that may or may not ever be promulgated. Since the *Alaska Airlines* action is so closely tied to the regulations and their status, and the regulations are not yet in effect, there is really nothing to litigate at this time.

To submit McDonald's claim to the delays of an action that does not mirror substantially his own is patently unfair.

McDonald's efforts to define and, he hopes, to vindicate his statutory rights should not be held hostage to the trial tactics and delays attendant to another action over which he has no control. Moreover, interests of judicial economy would not necessarily be served by a stay. A decision and judgment in the District of Columbia action likely would have no claim preclusion or collateral estoppel effect against either party to this action under the rules set forth in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) and *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330, 331, 99 S.Ct. 645, 651, 652, 58 L.Ed.2d 552 (1979); nor would this district court even be required to reach a consistent result on the due process issue since the rule of *stare decisis* is not implicated. *See Newsweek, Inc. v. U.S. Postal Service,* 663 F.2d 1186, 1196 (2d Cir.1981), *cert. denied sub nom. Council of Public Utility Mailers v. U.S. Postal Service,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982); *City Stores Company v. Lerner Shops of District of Columbia,* 410 F.2d 1010, 1014 (D.C.Cir.1969); *EEOC v. Pan American World Airways,* 576 F.Supp. 1530, 1535 (S.D.N.Y.1984).

This Court upholds plaintiff's right to chart the course of his own litigation and to prosecute his claims in the manner of his choice. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The uncertain risks of inconsistent results or duplicative litigation are not persuasive under the facts presently before this Court. Ac-

cordingly, defendant's motion to stay this action pending decision in the District of Columbia action is denied.

Counsel for the parties shall confer with regard to any necessary pre-trial proceedings. A Rule 16 conference will be held February 13, 1986 at 9:00 A.M. in Courtroom 31, United States Courthouse, 101 East Post Road, White Plains, New York 10601.

So Ordered.