Paul F. McDONALD, Plaintiff,

v.

**PIEDMONT AVIATION INC.,**
**Defendant.**

No. 84 Civ. 8262 (CLB).

United States District Court,
S.D. New York.

Sept. 7, 1988.

John G. McDonald, Rhinebeck, N.Y., for plaintiff.

Louis B. Kimmelman, O'Melveny & Myers, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

In this action for money damages and injunctive relief brought pursuant to 28 U.S.C. Secs. 1331 and 1332, the plaintiff alleges that the defendant violated Sec. 43 of the Airline Deregulation Act of 1978 ("the ADA"), 49 U.S.C.App. Sec. 1552, by refusing to give hiring preference to the plaintiff. This Court previously determined that Sec. 43 supported an implied private right of action. *McDonald v. Piedmont Aviation Inc.*, 625 F.Supp. 762 (S.D. N.Y.1986). Although, this interlocutory order was not amenable to immediate appellate review, our decision was cited with approval on March 27, 1987 by the Supreme Court in *Alaska Airlines v. Brock,* 480 U.S. 768, —— n. 9, 107 S.Ct. 1476, 1482 n. 9, 94 L.Ed.2d 661.

Defendant now moves for summary judgment on the ground that the plaintiff's claim was filed untimely. This motion presents a question of first impression in this Circuit: what is the appropriate statute of limitations to borrow for an action under Sec. 43(d) of the ADA? The motion was fully submitted for decision on July 27, 1988. Thereafter, the Court received, and considered, a letter from defendant's attorneys docketed August 19, 1988.

Through the ADA, Congress sought to deregulate the airline industry and make it more competitive. *Alaska Airlines v. Brock, supra* (citing S.Rep. No. 95–631, p. 52 (1978)). Confident that deregulation would lead to economic benefits for the public, but also aware that it would lead to dislocation of airline employees, Congress enacted the Employee Protection Program ("EPP") in Sec. 43, as part of the ADA. *Id.* The program provides for benefits to "protected employees," defined as employees who had been employed by a certified carrier for at least four years prior to October 24, 1978, Sec. 43(h)(1), and were affected by workforce reductions. The first part of the EPP provides for monthly assistance payments from the Federal Government to eligible employees who have been dislocated as a result of airline deregulation. Sec. 43(a)–(c), (e).

The second part of the EPP imposes upon the airline industry a "duty to hire" such protected employees. This subsection, Sec. 43(d)(1), provides in relevant part:

"Each person who is a protected employee of an air carrier which is subject to regulation by the Civil Aeronautics Board who is furloughed or otherwise terminated by such an air carrier (other than for cause) prior to the last day of the 10–year period beginning on October 24, 1978 shall have first right of hire, regardless of age, in his occupational specialty, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this title prior to. October 24, 1978. Each such carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except that such air carrier may recall any of its own furloughed employees before hiring such a person."

49 U.S.C.App. Sec. 1552(d)(1). McDonald bases his claims upon rights granted him as a "protected employee" under this second provision.

In October, 1981 Air New England, Inc. ceased operations, and the plaintiff, who had worked there as a professional commercial airline pilot for at least seven years, was involuntarily terminated. In November, 1981 the plaintiff alleges that he applied to Piedmont for employment, and one month later Piedmont hired a class of employees allegedly consisting entirely of non-protected employees. The plaintiff requested that Piedmont reconsider his application in light of his protected position under Sec. 43 of the ADA. In a letter dated May 28, 1982, Mr. L.R. Welch, Jr., Director of Personnel Administration for

Piedmont, informed Mr. McDonald that his application had been removed from Piedmont's active file and would receive no further consideration. Mr. McDonald filed this action on November 15, 1984, approximately two and a half years after he received notice from Piedmont that his application was no longer being considered.

Defendant now moves for summary judgment on the basis that the claim is time-barred by the relevant statute of limitations.

Congress did not provide a statute of limitations for Sec. 43 or any other provision of the ADA, therefore, this Court must "borrow" the most suitable rule of timeliness from another source. *Agency Holding Corp. v. Malley–Duff & Associates Inc.*, — U.S. —, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987).

The Supreme Court in *Agency Holding* outlined the relevant considerations in determining the appropriate statute of limitations. The Court stated that when a federal statute fails to specify a limitations period, the general assumption is that Congress intended by its silence that the court borrow a state statute of limitations. *Id.* This assumption that state law applies is based upon the longstanding practice of the courts, and Congressional awareness of that practice. *Id.*

The Supreme Court noted, however, that in some limited circumstances, state statutes of limitations would be unsatisfactory vehicles for the enforcement of federal law, and in those circumstances, it would be inappropriate to conclude that Congress would choose to adopt a state law at odds with federal substantive law. *Id.* (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983)). The Supreme Court found that the circumstances under which it is more appropriate to borrow a limitations period found in a federal, rather than state, statute are:

"[W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking ..."

*Id.*, 107 S.Ct. at 2763 (quoting *DelCostello*, *supra*, 462 U.S. at 171–172, 103 S.Ct. at 2294). In *Agency Holding* the Court concluded that the circumstances for applying a federal statute of limitations were met, and adopted the limitations period found in the Clayton Act to apply to civil claims under RICO.

Defendant argues that a uniform federal statute of limitations is needed for all Sec. 43(d) claims. The defendant claims that federal labor policy is directly implicated by Sec. 43(d), and therefore, the goals of uniformity and quick resolution of labor disputes require adoption of a relatively short statute of limitations. The defendant also notes that it is a national employer, subject to suit in every jurisdiction in which it flies, and therefore, a federal statute of limitations should be adopted to avoid perceived evils of forum-shopping. The defendant then offers as the closest analogy to a claim of violation of the first right of hire provision of Sec. 43(d), a claim of unfair labor practice for discriminatory hiring in violation of Sec. 8(a)(3) of the NLRA, to which the six month statute of limitations in Sec. 10(b) of the NLRA, 29 U.S.C. Sec. 160(b), applies. In the alternative, the defendant proposes that a claim under Sec. 43(d) be considered analogous to claims arising under the labor protective provisions of the Interstate Commerce Act, 49 U.S.C. Sec. 11347, and that the two year statute of limitations applicable to actions to enforce rights under the Interstate Commerce Act, 49 U.S.C. Sec. 11706(c)(1), *Modin v. New York Central Co.*, 650 F.2d 829, 833–34 (6th Cir.), *cert. denied*, 454 U.S. 967, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), be applied.

Defendant has called our attention to *Gonzales v. Aloha Airlines, Inc.*, 669 F.Supp. 1023, 1025 (D. Hawaii 1987), in which the District Court borrowed the NLRA six months statute of limitations in a Section 43 case, analogous to the instant case, as well as another Hawaii district court case, *Bigelow v. Hawaiian Airlines, Inc.*, 696 F.Supp. 1356 (1987), which fol-

lowed the decision in *Gonzales*. Those decisions have, of course, no precedential force in this Circuit. Defendant also directed the Court by letter to a decision in the United States District Court for the District of Columbia, *Crocker v. Piedmont Aviation, Inc.*, 696 F.Supp. 685 (D.D.C.1988), in which the Court held that the three year District of Columbia "catch-all" statute of limitations should be followed for certain claims under Section 43(d). This opinion also lacks precedential force in this Circuit.

■■■ After considering the factors outlined by the Supreme Court in *Agency Holding*, this Court concludes that Sec. 43(d) does not require that a federal statute of limitations be applied, and adopts the most closely analogous New York State limitations period.

While it may be that the federal statutes set forth by the defendant provide a closer analogy to a cause of action under Sec. 43(d) than any state rule, and that the practicalities of litigation against a multi-state employer point toward the adoption of a uniform federal statute, those are not the only factors to be considered by this Court. As the Supreme Court explained in *Agency Holding:* "the mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations ..." *Id.*, 107 S.Ct. at 2762. Furthermore, the fact that adoption of a state rule may lead to forum-shopping, which could not occur in this forum for reasons which will be noted below, or to litigation concerning which statute applies, are insufficient, alone or together, for a court to go against the traditional practice of selecting a state statute of limitations. This Court must also consider whether the federal policies at stake make a federal rule significantly more appropriate than a state rule. *Id.* at 2763.

This Court concludes that the federal policies at stake in a Sec. 43(d) claim would not be frustrated by the adoption of a state rule, and do not require the adoption of a federal statute of limitations. The Court finds no reason here to vary from the long-standing practice of adopting a state statute of limitations in the face of Congressional silence. The Employee Protection Program enacted in Sec. 43 of the ADA represents a humanitarian attempt by Congress to ensure that the benefits of deregulation would not be "paid for" solely by airline employees. *Alaska Airlines, Inc. v. Brock*, 480 U.S. at ——, 107 S.Ct. at 1478. The intent of Congress in passing this legislation is explained in the Committee Report on S. 2493, the Senate bill which contained the protections for employees that became the core of the EPP. H.R.Conf. Rep. No. 95–1779, p. 105 (1978), U.S.Code Cong. & Admin. News 1978, 3737. The report states in relevant part:

"[A]n individual employee will be able to do little to adjust to the new structure. Many airline employees have given most of their working lives to the air transportation industry and have too much invested to leave it now. In many cases, a job shift even within the industry would be costly because of lost seniority. Older employees looking for a new job might encounter difficulties because of their age. Since employees will not be ab[l]e to adjust in the sense their employers can, the Committee believes that a reasonable program of transition assistance should be provided.

"... The Committee believes that the Congress, on behalf of the American people, must insure that the benefits of the public which result from its decision to alter substantially the regulation of air transportation are not paid for by a minority—the airline employees and their families who have relied on the present system." S.Rep. No. 95–631, p. 114 (1978).

The Senate Committee Report, and the language of the statute itself, make it clear that the primary purpose of Congress in passing the EPP was to protect individual employees from the negative impact of deregulation. Through this provision Congress was attempting to relieve some of the hardship foreseeably affecting airline

employees. Protection of employees is the primary goal of Sec. 43 of the ADA, and that is the key distinction between this case and *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) and, *Robinson v. PanAmerican World Airways, Inc.*, 777 F.2d 84 (2d Cir.1985), where courts determined that adoption of a federal statute was appropriate and applied the six month limitations period of Sec. 10(b) of the NLRA to federal causes of action.

The decision in *DelCostello* involved a suit by an employee alleging that an employer had breached a provision of the collective-bargaining agreement, and that the union had breached its duty of fair representation by mishandling the ensuing grievance-and-arbitration proceedings. 462 U.S. at 163, 103 S.Ct. at 2289–90. The Supreme Court concluded that Sec. 10(b) was the applicable statute of limitations governing the suit, finding that the hybrid Sec. 301/fair representation claim amounted to a direct challenge to the private settlement of disputes under the collective bargaining agreement. *Id.* at 165, 103 S.Ct. at 2291. The Court stated that the federal statute of limitations selected was designed to accommodate the balance of interests present in this type of action, specifically the interest in allowing an aggrieved employee a satisfactory opportunity to vindicate his rights, and the national interest in stable bargaining relationships and finality of private settlements. *Id.* at 171, 103 S.Ct. at 2294.

In *Robinson*, our Court of Appeals applied Sec. 10(b) to a former airline employees' action for termination allegedly due to their pro-union activities. The action was brought under the Railway Labor Act, 45 U.S.C. Sec. 151 *et seq.*, which establishes a scheme for the resolution of labor disputes in the rail and transportation industry. 777 F.2d at 85. The Court defined the two key policy goals behind the RLA as speed, to prevent the disruption caused by prolonged labor disputes in the transportation industry, and uniformity, due to the interstate nature of the employer. *Id.* at 87. The Court stated that the key question in determining whether to apply Sec. 10(b) was

whether the dispute necessitated uniform and speedy settlement because it arose out of a labor-management relationship. The Court found that the plaintiff's claim presented such a case since the "discharge of pro-union employees at a time when a union is attempting to organize and represent the employees is the typical labor dispute raising the [relevant] labor-management concerns ..." *Id.* at 89.

The disputes in *DelCostello* and *Robinson* directly affected the consensual processes that federal labor law is chiefly designed to promote—the formation of a collective bargaining agreement and the private settlement of disputes under it. Thus, significant goals of labor policy would be frustrated through lack of uniformity or failure to resolve the dispute quickly. Under such circumstances, adoption of a federal statute of limitations is appropriate. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966).

In contrast, the Employee Protection Program in Sec. 43(d) does not directly affect industrial peace or the conduct of labor relations under a collective bargaining agreement. It provides remedial benefits through the first right of hire to individuals who lose their jobs due to action taken by Congress to deregulate the airline industry. While some labor issues may be indirectly implicated, such as seniority rights, the primary policy to be promoted by the legislation, the assistance of dislocated employees, would not be frustrated through the application of a state statute of limitations. Courts should apply the state rule in the absence of Congressional direction to the contrary. Such would be the expectation of Congress.

The defendant argues that the limited duration of the first right of hire provisions of the EPP support a short statute of limitations. The statute defines "protected employees" as those who are separated from employment between October 24, 1978 and October 24, 1988. This Court concludes, however, that this time limit was chosen to define the group eligible for the benefits of the EPP, and is unrelated to

138

the right of any one of them to bring a cause of action to enforce his rights, once established. Furthermore, ten years is a relatively long period to allow for the full effects of deregulation to be felt in the industry.

The Court must now consider which state rule to apply to this lawsuit. Since Mr. McDonald is a Massachusetts resident (Complaint, Para. 4, 5), and his claim accrued there, this Court, under Sec. 202, N.Y.Civ.Prac.L. & R., must borrow a statute of limitations from the laws of Massachusetts because New York would do so to avoid forum shopping. The Court concludes that the three year statute of limitations found in Mass.Gen. Laws Ann. Ch. 260, Sec. 2A for actions of tort applies to this case. The defendant allegedly violated its affirmative duty to plaintiff under Sec. 43(d) to give him preferential hiring treatment, causing economic injury to the plaintiff, and perhaps entitling him to injunctive relief. While the Court notes that an action in tort and an action under Sec. 43(d) are not identical, the lack of a perfect analogy alone is not grounds to discard a state rule. *Agency Holding*, 107 S.Ct. at 2762.

Based upon the foregoing, the Court concludes that the plaintiff's action was timely filed, and, therefore, denies the defendant's motion for summary judgment on the ground of the statute of limitations.

Counsel for the parties shall attend a final pretrial and status report conference before me on October 12, 1988 at 9:00 a.m. in Courtroom 31, United States Courthouse, 101 East Post Road, White Plains, New York, at which time an early trial date will be established by the Court. Please submit a statement of issues to be tried, separately numbered, together with voir dire requests and requests to charge.

So Ordered.