Hobart N. CROCKER, Jr., Plaintiff,

v.

PIEDMONT AVIATION, INC.
Defendant.

Civ. A. No. 86–1673 (RCL).

United States District Court,
District of Columbia.

Aug. 11, 1989.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This case comes before the court on plaintiff's motion in limine, defendant's opposition thereto, and plaintiff's reply.

The purpose of a motion in limine is to "procure a definitive ruling on the admissibility of evidence at the outset of the trial." 21 C. Wright & K. Graham, Jr., *Federal Practice and Procedure* § 5037, at 194 (1977) (hereinafter *Federal Practice And Procedure*); *see also Koller By And Through Koller v. Richardson–Merrell*, 737 F.2d 1038, 1067 (D.C.Cir.1984) (concurring opinion) (such motions help to "resolve in advance ... problems that can be reasonably anticipated or expected to arise at

the trial"). The court recognizes that in some cases and with regard to some issues it is "difficult to make a proper [evidentiary] ruling out of the context of the trial," *Federal Practice and Procedure*, at 195, but finds that this case has matured to a point where the court is able now to address some portions of plaintiff's motion.[1]

Plaintiff in this case seeks injunctive relief directing defendant Piedmont Airlines to hire him as a pilot, as well as monetary damages in the form of back pay and other foregone compensation. In his complaint, plaintiff alleges that defendant failed to hire him in violation of the Airline Deregulation Act of 1978 (hereinafter "ADA" or "the Act"). Specifically, in his complaint, plaintiff alleges that he submitted an application for employment to defendant on July 1, 1982, that he was interviewed by defendant's director of personnel in North Carolina on July 6, 1982, and that defendant has not communicated with plaintiff since that interview aside from sending him a form letter asking that plaintiff resubmit his resume. Plaintiff further alleges that defendant "has filled vacancies for which plaintiff's application was timely by hiring, instead of plaintiff, additional pilots who do not enjoy 'protected employee' status and were not previously employed, furloughed or terminated by Piedmont." Complaint, at 3.

In pertinent part, the Airline Deregulation Act of 1978 states that:

Each person who is a protected employee of an air carrier ... shall have first right of hire, regardless of age, in his occupational specialty, by any other carrier hiring additional employees.... Each such air carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except that such air carrier may recall any of its own furloughed employees before hiring such a person.

49 U.S.C.App. § 1552(d)(1) (Supp.1988). Under section 43(f) of the ADA, the Secretary of Labor was granted authority to issue implementing regulations, which were issued in late 1985. *See* Fed.Reg. 53094 (1985); 29 C.F.R. §§ 220.01–.51 (1987). The United States Supreme Court has stated that "[t]he language of the[ ] provisions [of the ADA] is sufficiently unambiguous to notify carriers of their responsibilities and sufficiently detailed to require little further action on the part of the Secretary." *Alaska Airlines v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1482, 94 L.Ed.2d 661 (1987). Nonetheless, the Secretary has exercised the authority to issue implementing regulations and those regulations are entitled to deference by the court.[2]

Portions of the regulations promulgated by the Secretary are relevant to the resolution of the issues now before the court. In pertinent part, section 220.20(a) of the regulations provides that a covered airline had a duty to hire only those "protected" employees who

otherwise meet[ ] the qualification requirements established by such carrier before it hires any other applicant when such carrier is seeking to fill a vacancy in the designated[3] employee's occupational specialty from outside its work force.

29 C.F.R. § 220.20(a) (1987). Section 220.-21 further provides in pertinent part that

[a] covered air carrier shall be entitled to apply any prerequisites or qualifications determined by it for any vacancy, except that, solely with respect to the duty to hire created by the Act, a covered air carrier shall not be entitled to limit employment opportunities for designated employees on the basis of

(1) Initial hiring age (provided that such prohibition shall not be applicable to retirement ages applicable to all of any class or craft of such air carrier's employees); or

---

**1.** Among other things, discovery in this case has been completed, and the case is nearly ready for trial.

**2.** *See, e.g., Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977).

**3.** The regulations generally define a "designated" employee as a "protected" employee with some qualifications set forth in section 220.10. Defendant has not contended that plaintiff fails to qualify as a "designated" employee.

(2) The existence of any seniority, recall rights or previous experience with any other air carrier....

29 C.F.R. § 220.21(a) (1987). When considering applications from more than one applicant for a particular vacancy, however, the covered airline may exercise "absolute discretion" in choosing which such applicant to hire. 29 C.F.R. § 220.20(c) (1987).

■ The court has already found that plaintiff is a "protected employee" for the purposes of the ADA.[4] Accordingly, in order to establish defendant's liability under the ADA, it remains for plaintiff to show:

1) that he met the qualification requirements established by the carrier before it hires any other applicant when seeking to fill a vacancy with respect to the occupational specialty he sought (except for initial hiring age)[5], and

2) that the carrier failed to hire him before any other person other than one of the carrier's own furloughed employees or another "protected employee."

■ The primary focus of the present dispute is defendant's apparent intent to introduce at trial evidence of an incident in which plaintiff was allegedly disciplined by Air New England, a previous employer.[6] Plaintiff contends, and defendant does not refute, that defendant was unaware of this incident at the time of its decision not to hire plaintiff; accordingly, plaintiff argues that such evidence is irrelevant to whether defendant's decision violated the Act in question. Defendant, by contrast, contends that such evidence is relevant to the determination of whether its decision violated the Act, and that it is in any event relevant to plaintiff's credibility and to the issue of damages in this case. Finally, plaintiff asks the court to restrain defendant from raising at trial allegations that plaintiff is a racist.

The evidence relating to the Air New England disciplinary suspension under the circumstances of this case is not relevant to defendant's liability under the ADA. That plaintiff's qualifications are relevant to defendant's liability under the ADA does not mean that information unknown to defendant at the time it made its decision therefore becomes relevant to defendant's liability. In support of its argument that information relating to that incident is now relevant to whether defendant's decision violated the Act, defendant contends that the alleged incident supports its argument that plaintiff was unqualified because of his unprofessional manner, and that its decision not to hire was based on this consideration rather than on plaintiff's age. This argument merely begs the issue before the court, since if the incident in question was unknown to defendant at the time it reached its decision, it could not have played a part in defendant's decision, whatever were the grounds for that decision.[7]

---

4. In a memorandum opinion and order filed on August 3, 1988, this court granted plaintiff's unopposed motion for partial summary judgment with respect to plaintiff's claim that he is a "protected employee" within the meaning of that Act.

5. The requirement, set forth in the Secretary's implementing regulations, that the "designated" employee show that he meets the qualifications for his occupational specialty is consistent with the intent of Congress that "the implementation of the Airline Deregulation Act of 1978 result in no diminution of the high standards of safety in air transportation attained in the United States on October 24, 1978." 49 U.S.C.App. § 1307(a). Cf. *Murnane v. American Airlines, Inc.,* 482 F.Supp. 135, 153 (D.D.C.1979) (ADA "must be read to require any 'protected employee' ... to satisfy any bona fide occupational qualifications established by the hiring air carrier.").

6. The parties agree that defendant set forth its intent to introduce evidence of this incident in its pretrial statement. However, since the docket entries in this case do not indicate that any pretrial statements have ever been filed in this case, the court is unable to review defendant's factual allegations relating to this incident. The court shall order the parties to file a joint pretrial statement in this case in a form set forth in a separate pretrial order also filed in this case on this date.

7. Defendant cites two cases in support of its position that the evidence in question is directly relevant to its liability under the ADA, *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and *Frank v. Bowman Transp. Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), which do not persuade the court to a contrary result.

**4**

Defendant alternatively argues that evidence of the incident is relevant to plaintiff's entitlement to monetary relief; more specifically, defendant contends that the evidence is relevant to whether plaintiff could have suffered injury as a result of defendant's claimed violation of the ADA, if defendant is found to have violated that act. In advancing that argument, defendant relies primarily on *Murnane v. American Airlines, Inc.*, 482 F.Supp. 135 (D.D.C.1979), *aff'd*, 667 F.2d 98 (D.C.Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982). Plaintiff in that case, a forty-two-year-old pilot who had been denied employment by American Airlines, claimed that American's failure to hire him constituted unlawful age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (1976) (hereinafter "ADEA"). After a bench trial, the court found that defendant's policy of only hiring pilots 30-years-old or younger was a bona fide occupational qualification within the meaning of the ADEA and accordingly ruled in favor of defendant. However, the court added that even had plaintiff properly demonstrated defendant's liability for discrimination under the ADEA, he could not have shown injury resulting from that discrimination, since the record in that case showed that American would not have hired plaintiff had the application process in his case been permitted to progress beyond the initial stages.[8] 482 F.Supp. at 148–151. In this case, defendant Piedmont similarly contends that it would have eventually learned of the disciplinary suspension, especially after communicating with plaintiff's references, and that it is entitled to show that, had it continued to consider plaintiff's application, it would have learned of the disciplinary suspension, and that consideration of that suspension would have rendered plaintiff unqualified for the purposes of the ADA.

The court agrees that evidence of the disciplinary suspension may be relevant to the issue of damages in this case, so long as defendant is able to lay a proper foundation for the introduction of such evidence. The fact that defendant was permitted under the ADA to consider plaintiff's qualifications in reaching its decision indicates that defendant is entitled to show that plaintiff did not suffer injury because later obtained information would have shown that plaintiff was unqualified for the purposes of the ADA. It is true that, under the ADA, as compared to the ADEA, the plaintiff need only show that he met the air carrier's qualification requirements established by the carrier before it hires any other applicant when such a carrier is seeking to fill a vacancy in the occupational specialty in question; he need not show that he was competitive with respect to "non-protected" applicants. Nonetheless, defendant may still show that it would have learned of the disciplinary suspension had the application process continued in plaintiff's case, and that knowledge of that suspension would have rendered plaintiff unqualified.

Defendant, however, must first lay a proper foundation for the introduction of evidence relating to the disciplinary suspension. The court cannot simply assume that plaintiff would have learned of the disciplinary suspension at some later stage in the application process or at some date subsequent to plaintiff's hiring or that knowledge of that suspension would have rendered plaintiff unqualified for the purposes of the ADA. Accordingly, the court shall withhold judgment with respect to whether evidence of the suspension is relevant to the issue of damages until defendant shows whether and when it would have discovered evidence of the Air New England suspension, and that such a suspension would have rendered plaintiff unqualified. The court shall hold a brief evidentiary hearing on that issue at the time of trial in this case, out of the hearing of the jury, if any. If the court permits evidence of the suspension to be introduced at trial, plaintiff would of course remain free to

---

**8.** Plaintiff in that case had sent his application to defendant, but that application was never acted upon.

show that—as he contends here—the incident was merely part of a labor dispute with the airline and did not in any way implicate his professional qualifications as a commercial pilot.

Defendant also contends that evidence of the disciplinary suspension is relevant to plaintiff's credibility. Since the court does not find that it can properly address that particular issue before trial in this case, it shall withhold judgment until the time of trial if either party chooses to again raise that issue at that time.

█ Plaintiff further argues that evidence of the incident, even if found relevant, should be excluded because of the danger of unfair prejudice. Rule 403 of the Federal Rules of Evidence states in pertinent part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ..." Fed.R. Evid. 403 (1988). Plaintiff does not offer any convincing arguments in support of the proposition that evidence of the incident may cause unfair prejudice, confusion of the issues, or be misleading to the jury. Plaintiff's contention that the incident took place "over twelve years ago" does not help him, since plaintiff's past professional record is exactly what is at issue; his contention that the "disciplinary suspension" was not a "disciplinary suspension" at all but merely part of a labor dispute does not show unfair prejudice, since that is a factual issue that plaintiff must address at trial. Accordingly, the court finds that the probative value of evidence of the "disciplinary suspension" at issue is not substantially outweighed by any possible unfair prejudice.

Finally, plaintiff requests that defendant be restrained from raising at trial any allegations that plaintiff is a racist. Plaintiff contends with some justification that defendant raised that issue during a deposition of plaintiff's wife. In its opposition brief, defendant denies that it plans to make racism an issue in this case. Defendant's Memorandum In Opposition To Plaintiff's Motion In Limine, at 1. In light to defendant's representation that it shall not make racism an issue in this case, the court accepts defendant's representation and need not address plaintiff's motion with respect to this issue.

Upon consideration of the foregoing, as well as the entire record in this case, it hereby is

ORDERED, that plaintiff's motion in limine is GRANTED IN PART with regard to the introduction of evidence relating to that alleged disciplinary suspension in connection with defendant's claimed liability under the ADA flowing from its decision not to hire plaintiff, and it hereby further is

ORDERED, that the court shall withhold judgment as to whether evidence of the disciplinary suspension is relevant to the issue of damages in this case until the court hears evidence on that issue at the time of trial in this case; at trial, the court shall hold a brief evidentiary hearing, out of the hearing of the jury, if any, on whether and when defendant would have learned of the disciplinary suspension had the application process proceeded, and whether knowledge of that suspension would have rendered plaintiff unqualified for the purposes of the ADA, and it further hereby is

ORDERED, that the court shall also withhold judgment as to the admissibility of direct evidence relating to the alleged suspension in connection with the issue of plaintiff's credibility, and shall revisit that issue at the time of trial should either of the parties request the court to revisit that issue, and it hereby further is

ORDERED, that the court accepts defendant's representation that it shall not make racism an issue in this case, and defendant shall not ask any witness in this case whether plaintiff is a racist, or any questions designed, directly or indirectly, to determine whether plaintiff is a racist, and it further hereby is

ORDERED, that the parties shall file a joint pretrial statement within 20 days of the date of this memorandum opinion and order in a form set forth in a pretrial order

also filed in this case on this date, and it hereby further is

ORDERED, that defendant shall within 10 days of the date of this memorandum opinion and order, or such further time as the court may allow, file a memorandum addressing: 1) whether and to what extent a jury is properly demandable in this case, and 2) whether plaintiff's request for injunctive relief is still appropriate at this time. Plaintiff may respond if he wishes within 10 days after defendant's memorandum is filed. It further hereby is

ORDERED, that, after the joint pretrial statement is filed, the Deputy Courtroom Clerk shall contact the parties to arrange a further status conference in this case to, among other things, set pretrial conference and trial dates in this case.

SO ORDERED.