**Paul F. McDONALD, Plaintiff–Appellee,**

v.

**PIEDMONT AVIATION INC.,**
**Defendant–Appellant.**

**No. 204, Docket 90–7328.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1990.

Decided April 11, 1991.

Albert J. Gaynor, White Plains, N.Y. (John G. McDonald, Rhinebeck, New York, of counsel), for plaintiff-appellee.

Louis B. Kimmelman (O'Melveny & Myers, New York City, Jeffrey I. Kohn, of counsel), for defendant-appellant.

Before LUMBARD, NEWMAN, and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

Piedmont Aviation Inc. appeals from the March 29, 1990 judgment of the Southern District of New York, Charles L. Brieant, *Chief Judge,* entered after a jury trial. The jury concluded that Piedmont had denied McDonald a "first right of hire" under Section 43(d) of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.App. § 1552(d) (1988); it awarded compensatory damages of $2,226,920 for the expected duration of McDonald's career.

We affirm the finding of liability, reverse the damage award, and remand for further proceedings to determine damages available to McDonald under Section 43(d) for the period of 72 months from the denial of employment.

In 1978, Congress enacted the ADA as part of its deregulation of the commercial airline industry. Congress sought to ensure that the benefits to the public flowing from this deregulation would not be "paid for" by airline employees who had relied on the heavily regulated nature of the industry in deciding to accept and to retain positions with commercial air carriers. *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 680, 107 S.Ct. 1476, 1477–78, 94 L.Ed.2d 661 (1987). The Senate Committee Report expressed its reasons for providing protection for individual airline employees as follows:

> [A]n individual employee will be able to do little to adjust to the new structure. Many airline employees have given most of their working lives to the air transportation industry and have too much invested to leave it now. In many cases, a job shift even within the industry would be costly because of lost seniority. Older employees looking for a new job might encounter difficulties because of their age. Since employees will not be ab[l]e to adjust in the sense their employers can, the Committee believes that a reasonable program of transition assistance should be provided.

S.Rep. No. 631, 95th Cong., 2d Sess. 114 (1978).

To assist employees dislocated as a result of deregulation, Congress enacted an employee protection program in Section 43 of the ADA. *Alaska Airlines,* 480 U.S. at 680–81, 107 S.Ct. at 1477–78. Section 43 provides for benefits, in the event of work force reduction, to those who are "protected employees." [1] *See* 49 U.S.C.App. § 1552. Section 43, subsection d, imposes on airlines certified under the prior regulatory system a "duty to hire" protected employees whenever additional employees are hired:

> Each person who is a protected employee of an air carrier which is subject to regulation by the Civil Aeronautics Board who is furloughed or otherwise terminated by such an air carrier (other than for cause) prior to the last day of the 10–year period beginning on October 24, 1978, shall have first right of hire, regardless of age, in his occupational specialty, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this appendix prior to October 24, 1978. Each such air carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except that such air carrier may

---

1. A "protected employee" is a person "who, on October 24, 1978, has been employed for at least 4 years by an air carrier holding a certificate issued under section 1371 of this appendix [49 U.S.C.]," excluding any members of the board of directors or officers of a corporation. 49 U.S.C. App. § 1552(h)(1).

recall any of its own furloughed employees before hiring such a person....

49 U.S.C.App. § 1552(d)(1).

On October 31, 1981, McDonald, a pilot for Air New England since May 15, 1972, was terminated when the airline ceased all operations. Because McDonald had been employed by the carrier for more than four years, he was a protected employee under Section 43(d). Piedmont concedes that it is subject to Section 43(d)'s duty to hire protected employees.

On November 19, 1981,[2] McDonald submitted a job application to Janet Cook, who was the secretary of Captain Fred D. Womack, Piedmont's director of flight operations and flight safety, one of three persons at Piedmont who interviewed pilot applicants. McDonald's application included his relevant work history; it stated that he left Air New England because the company had been "liquidated."

When McDonald delivered his application to Cook, she told him that he should also submit a resume and his Air New England flight time summary and that he should take steps to be qualified as a flight engineer.

McDonald testified that he sent his resume and flight summary to Piedmont on December 2. On December 14, McDonald took a written examination to qualify as a flight engineer. He learned the results of this examination in two or three days and, within about a week, he telephoned Cook and informed her that he had passed the examination. After receiving written confirmation that he had passed the examination, he mailed the results to Piedmont on January 1, 1982.

Piedmont was hiring pilots at the time McDonald submitted his application. Classes of pilots began training on November 16, November 30, January 4, May 24, and June 7. Each of the five classes consisted of approximately 16 pilots; none of the trainees was a protected employee under Section 43(d).[3] In addition, these pilot trainees were considerably younger than McDonald, who was 37. None of the trainees was older than 32. The average age of the members of each class was less than 29. There was evidence that because the FAA mandates that pilots retire by age 60, it is considerably more expensive for an airline to fund the pensions of pilots hired at an older age. Piedmont calculated the average age of these classes to the tenth of a year.

Piedmont did not acknowledge receipt of McDonald's application, request additional information, or interview McDonald for a pilot position. On February 1, McDonald wrote Piedmont, specifically calling attention to its duty to hire him under Section 43(d). McDonald wrote a second letter on April 21, in which he restated Piedmont's duty to hire protected pilots regardless of age. On April 30, McDonald went to Piedmont's training center in person to confirm that Womack had received the second letter.

At trial, Cook testified that, on April 30, McDonald came to her office without an appointment and asked if Womack would see him. Cook told McDonald that Womack was in a meeting. McDonald then inquired whether Womack had received the April 21 letter; Cook responded that she did not know. Cook took a copy of McDonald's letter to Womack and asked if he had seen it. Womack told Cook that he had, but that he would not see McDonald.

When Cook returned to her office and told McDonald what Womack had said, McDonald remained in her office staring at her. She said that McDonald's face became red and he seemed upset. McDonald asked Cook why Womack had not respond-

---

**2.** McDonald testified that during a November 2 appointment with Bill Hall, Piedmont's director of training, he gave Hall a supplemental application form, which McDonald had created. Hall accepted the document and gave McDonald a Piedmont application form. On November 19, McDonald delivered the completed application to Piedmont.

At trial, McDonald argued that November 2 was the date he applied; Piedmont contended that it was November 19. Because the difference is not relevant to this appeal, we only note the parties' disagreement.

**3.** After the June 7 class, Piedmont adopted a policy of hiring only protected pilots.

ed to his letter; he asked if Cook "understood his position." Finally, he told Cook that he was going to have to do something he did not want to do, which would be an embarrassment to him and Piedmont. McDonald stood in Cook's office for a few more seconds, then left.

Cook testified that she was upset and went into Womack's office and told him what happened. Womack reported the incident to Piedmont's personnel director, Ray Welch. In a telephone conversation on May 21 and in a subsequent letter, Welch told McDonald that because of the April 30 incident Piedmont would give his employment application no further consideration.

Following notice of Piedmont's decision not to hire him, McDonald continued to apply to other airlines and worked temporarily as a pilot for private individuals and organizations. In May 1983, he took a job with Trans East International Airlines and piloted small Cessna and commuter aircraft. In October 1983, McDonald obtained a pilot's position at Air Berlin, Inc., a small charter company based in Berlin, Germany, where he continued to be employed at the time of trial.

McDonald's salary at Air Berlin is considerably less than it would have been at Piedmont. According to the earnings estimates of McDonald's expert, Daniel W. Akins, which the jury credited fully in determining a verdict, in 1984, McDonald probably would have earned $68,656 at Piedmont; his actual earnings at Air Berlin were $33,212. In 1989, McDonald earned $63,149; his likely earnings at Piedmont would have been $136,777. Akins estimated that this differential would continue to increase through the duration of McDonald's career. While his earnings at Air Berlin would stabilize at about $60,000, his salary at Piedmont and USAir (Piedmont's successor corporation) would eventually exceed $182,000.

In November 1984, McDonald brought an action against Piedmont in the Southern District, alleging that Piedmont denied him a first right of hire under Section 43(d). After a trial in March 1990, the jury returned a verdict for McDonald for $2,226,-920, the full amount of lost wages and employee benefits sought by McDonald from January 1982 through the expected duration of his career, to age 60. On appeal, Piedmont challenges the finding of liability and the damage award.[4]

■ Piedmont first contends that the district court erred in applying a three-year Massachusetts statute of limitations to this action. Piedmont argues that the district court should have applied the six-month statute of limitations for actions brought under Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1988), or the two-year statute of limitations for claims arising under the labor protective provisions of the Interstate Commerce Act, 49 U.S.C. § 11706(c)(1) (1988). Under either of these proposed alternatives, McDonald's claim would be barred. We disagree with Piedmont's position, substantially for the reasons set forth in the district court's September 7, 1988 Memorandum and Order. See *McDonald v. Piedmont Aviation Inc.*, 695 F.Supp. 133 (S.D.N.Y. 1988).

Because Congress did not provide a statute of limitations for Section 43(d), the court must "borrow" one from another source. See *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 146, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987). Courts have generally concluded that Congress intended them to apply the most closely analogous statute of limitations under state law. See *id.*

Applying the *Agency Holding* analysis, the district court concluded that the primary federal policy at stake in a Section 43(d) claim—the assistance of dislocated employees—would not be frustrated by the application of a state rule and, therefore, does not require the application of a federal statute of limitations. See *McDonald v.*

---

4. The parties do not dispute and we agree that there is an implied right of action under Section 43(d). See *Long v. Trans World Airlines, Inc.*, 913 F.2d 1262, 1265 (7th Cir.1990); *McDonald v.*

*Piedmont Aviation Inc.*, 625 F.Supp. 762, 764–65 (S.D.N.Y.1986); cf. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 687 n. 9, 107 S.Ct. 1476, 1481 n. 9, 94 L.Ed.2d 661 (1987).

*Piedmont,* 695 F.Supp. at 136, 137. The district court found no reason to vary from the longstanding practice of adopting a state statute of limitations in the face of Congressional silence. *See id.* at 136. It then applied the New York borrowing statute, Sec. 202 N.Y.Civ.Prac.L. & R., under which it determined that a Massachusetts statute of limitations should apply, as McDonald was a Massachusetts resident and his claim accrued there. *See id.* at 138. We agree with the district court's application of the three-year Massachusetts statute of limitations for actions of tort. *See id.*

■ Second, Piedmont challenges the district court's exclusion of evidence purportedly relevant to McDonald's qualifications for employment. This evidence includes: 1) testimony of two persons who interviewed McDonald for employment at other airlines; 2) portions of McDonald's employment and military records; and 3) testimony of a purported expert on pilot selection profiles. Piedmont argues that this evidence would have demonstrated that McDonald was unqualified for employment at Piedmont and, therefore, was not entitled to a first right of hire under Section 43(d).[5] However, Piedmont concedes it did not have any of this information at the time it refused to hire McDonald.

Piedmont contends that the district court erred in vacating its notice to depose Captain Michael G. Fortune, who interviewed McDonald for employment at People Express Airlines, Inc. in late 1981 and rejected him. Piedmont sought to depose Fortune on March 5, 1990, 15 days before the trial began; Piedmont asserted the deposition was necessary because Fortune would be unavailable to testify. *See* Fed.R.Evid. 804(a)(5); (b)(1). According to Piedmont, Fortune would have testified regarding his personal impressions of McDonald's temperament and suitability as a pilot. Pied-

mont argued that the testimony would be relevant to damages and to McDonald's credibility.

At a February 23 pretrial conference, the district court granted McDonald's request to vacate the deposition notice because the discovery deadline had passed and because Fortune's videotape testimony would be excluded at trial as being substantially more prejudicial than probative. *See* Fed.R.Evid. 403. The district court clearly acted within its discretion in so ruling.

The district court also acted within its discretion in refusing "for essentially the same reasons" to receive the same type of testimony from Captain Karen Lee, who interviewed McDonald for a pilot position with Orion Air. The district court made this ruling at a conference held on March 5.

■ Next, we reject Piedmont's argument that the district court erred in excluding portions of McDonald's military and employment records, as well as the testimony of Dr. Robert Helmreich, a psychologist. Piedmont sought to use the military and employment records in its cross-examination of McDonald; it intended to present Helmreich as a defense witness.

The district court properly excluded all of this evidence. As Piedmont had none of this information at the time it refused to hire McDonald, the evidence was irrelevant to Piedmont's liability under Section 43(d). *See Crocker v. Piedmont Aviation, Inc.,* 743 F.Supp. at 3.

Piedmont cannot ignore its statutory obligation to give first consideration to protected pilots. It made no good faith examination of McDonald's application. So far as Piedmont then knew, McDonald was qualified to be employed as a pilot. Under the circumstances, Piedmont may not now be permitted to show what it might have found, which might have been a reason for finding McDonald not qualified. Conse-

---

5. To be entitled to a "first right of hire," a protected employee must meet an air carrier's qualifications and requirements for employment. *See* 29 C.F.R. §§ 220.11(a), 220.20(a), and 220.21(a) (1989); *Hulsey v. USAir, Inc.,* 868 F.2d 1423, 1425 n. 2 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 239, 107 L.Ed.2d 190 (1989);

*Robinson v. American Airlines, Inc.,* 722 F.Supp. 757, 766 (D.D.C.1989), *aff'd,* 908 F.2d 1020 (D.C. Cir.1990); *Crocker v. Piedmont Aviation, Inc.,* 743 F.Supp. 1, 2–3 (D.D.C.1989), *appeal filed,* No. 90–7021 (D.C.Cir. Feb. 23, 1990), *argued,* January 18, 1991.

quently, Piedmont is liable for damages under the Airline Deregulation Act.

■ Third, Piedmont contends that the district court erred in instructing the jury regarding the first right of hire under Section 43(d). Piedmont argues that the instruction was prejudicial because it permitted the jury to find liability before McDonald had met its qualifications for employment, namely the "requirement" that McDonald be qualified as a flight engineer. We disagree.

In its jury instructions, the district court stated that "Captain McDonald must prove that he applied; that his application was complete and in conformity with the rules and practices of Piedmont...." The district court further stated that "[o]nce a pilot meets the qualifications of the occupational specialty set forth in the statute, his right to be employed by Piedmont must be preferred...."

At trial, Piedmont sought to prove that the flight engineering examination, or its equivalent, was a prerequisite to employment as a Piedmont pilot. In contrast, McDonald argued that although Piedmont requested him to obtain flight engineering qualifications, this was not a requirement for employment as a pilot. There was evidence that at least one other Piedmont pilot, who began training in July 1982, was not so qualified.

We believe the jury was properly instructed to determine whether McDonald met Piedmont's requirements and qualifications for employment. As part of this analysis, the jury could determine whether successful completion of the written flight engineering examination was such a requirement, as Piedmont contends.

■ Piedmont next argues that the district court inadequately instructed the jury regarding McDonald's obligation to mitigate damages. The district court instructed the jury as follows:

If you find Piedmont violated the statute and the violation was a substantial factor in not hiring [McDonald] and caused [McDonald] damage, you may then consider whether Captain McDonald should have taken any action such as a reasonable person would have taken under the circumstances to avoid or reduce his damages. And if you find he did not, you may reduce his damages accordingly. If you find that Captain McDonald's going to work for Air Berlin satisfied this duty to mitigate, then you should reduce his damages only by the extent of the amount he received or will receive in salaries and benefits from Air Berlin.

This instruction fully apprised the jury of McDonald's duty to mitigate damages, given the lack of evidence that he had failed to do so. *See Selzer v. Fleisher,* 629 F.2d 809, 812 (2d Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981).

■ Finally, we address Piedmont's challenges to the damage award. At trial, Chief Judge Brieant instructed the jury that damages for a violation of Section 43(d) were intended "to compensate or make Captain McDonald whole insofar as possible...." He further instructed:

[Y]ou should consider the earnings and benefits the plaintiff would have received in Piedmont if he had been hired and pursued a normal career with that company, minus, less the earnings and benefits plaintiff earns at his present position with Air Berlin or could have earned elsewhere in the exercise of due diligence seeking a job as an aircraft crew member.

The jury thereafter found for McDonald and awarded him $2,226,920. This was the amount that McDonald's expert witness, Daniel W. Akins, had computed as McDonald's adjusted lost earnings and benefits for the period beginning in late 1981 or early 1982[6] and ending in April 2004, when McDonald would retire at age 60.

---

6. Based on the amount of the damage award, the jury found that Piedmont could have placed McDonald in its January 4 class of pilots. The jury discredited Piedmont's claim that it had filled the January 4 class before Piedmont had notice of McDonald's protected status and McDonald had proved that he met its employment requirements.

Piedmont argues that the district court erred in permitting the jury to award compensatory damages for the expected duration of McDonald's career. It asserts that Section 43(d) is part of a temporary transitional assistance program under which remedies were provided for a limited period of 72 months. We agree.

Section 43(d) does not specify what damages are recoverable for the denial of a protected employee's first right of hire. Consequently, this court's "'function is to decide what remedies are appropriate in light of the statutory language and purpose and of the traditional modes by which courts compel performance of legal obligations.'" *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 376, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982) (quoting *Montana–Dakota Util. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 261–62, 71 S.Ct. 692, 700–01, 95 L.Ed. 912 (1951) (dissenting opinion)). In reviewing the statutory language, Section 43(d) should be considered in the context of the entire employee protection program of Section 43. *See* N. Singer, *Sutherland Statutory Construction* §§ 47.01, 47.02 (4th ed. 1984 & Supp.1990).

Section 43 consists of two interrelated components. The first provides for monthly federal assistance payments while an eligible protected employee is looking for a new position. *See* 49 U.S.C.App. § 1552. Although this program was not funded and never became operative, *see Alaska Airlines, Inc. v. Brock,* 480 U.S. at 681, 107 S.Ct. at 1478, assistance payments were to continue until the protected employee obtained "reasonably comparable employment" or had received benefits for 72 months, whichever came first. *See* 49 U.S.C.App. § 1552(b), (e). The second aspect of Section 43, set forth in subsection (d), created a hiring preference to enable these employees to find reasonably comparable employment. *See id.* "The duty to hire provision was adopted as a supplement for the monthly assistance payments to reduce and [sic] burden on the federal government purse...." *Crocker v. Piedmont Aviation, Inc.,* No. 86–1673 (RCL) (D.D.C. Feb.

8, 1990), *appeal filed,* No. 90–7021 (D.C. Cir. Feb. 23, 1990), *argued,* January 18, 1991.

Given the language of Section 43 and subsection (d)'s purpose as a supplement to the temporary monthly assistance payments, we agree that damages recoverable under Section 43(d) are limited. We hold that a protected employee can recover damages for the denial of a first right of hire until the employee obtains employment reasonably comparable to that denied, for a maximum of 72 months.

Although the district court did not instruct the jury to determine whether McDonald's employment at Air Berlin was reasonably comparable to that at Piedmont, we find, because of the enormous pay differential and the other obvious differences between working as a pilot for a small German charter company and a large American commercial air carrier, that the jury could not have determined that the employment was reasonably comparable. We conclude that McDonald is entitled to damages for 72 months from January 1982, when he was denied a first right of hire by Piedmont.

We affirm the jury's determination of liability but reverse the award of damages and remand for further proceedings to determine damages. On remand, the district court may, in its discretion, compute damages for 72 months from the evidence given by Daniel W. Akins, McDonald's expert, which the jury credited, and use the remittitur device to order a new trial on damages unless the plaintiff accepts the reduced sum, as calculated for the allowable 72 months.

Affirmed in part; reversed in part and remanded for further proceedings to calculate damages.