Paul F. McDONALD, Plaintiff,

v.

PIEDMONT AVIATION,
INC., Defendant.

No. 84 Civ. 8262 (CLB).

United States District Court,
S.D. New York.

June 4, 1992.

John F. McDonald, Rhinebeck, N.Y., for plaintiff.

Jeffrey I. Kohn, O'Melveny & Myers, New York City, for defendant.

## MEMORANDUM & ORDER

BRIEANT, Chief Judge.

By motion fully submitted on April 21, 1992, plaintiff Paul F. McDonald moves this Court for additional relief on remand. As the disposition of this motion is controlled entirely by prior proceedings in the case, the Court will briefly summarize the history of this litigation, familiarity with which is assumed.

Plaintiff McDonald is an airline pilot. He was employed in that capacity by Air New England until that carrier's demise in 1981. In late 1981, McDonald attempted to secure alternative employment with defendant Piedmont Airlines[1] by exercising his statutory "first right of hire" under 49 U.S.C.App. § 1552(d)(1) (West 1992). This provision, passed as part of the Airline Deregulation Act of 1978 (the "ADA"), generally granted certain employees of airlines adversely affected by deregulation a right to be hired first by surviving air carriers. Piedmont, however, refused to hire McDonald as a pilot, despite the fact that he met all relevant qualifications for that position. Accordingly, on November 15, 1984, McDonald filed suit against Piedmont, alleging that Piedmont had violated the first-hire provision of the Act.

After ruling that the Act created an implied private right of action, *McDonald v. Piedmont Aviation*, 625 F.Supp. 762 (S.D.N.Y.1986), and that McDonald's claim was timely brought, *McDonald v. Piedmont Aviation*, 695 F.Supp. 133 (S.D.N.Y. 1988), this Court conducted a jury trial of the remaining issues in the case. The jury

1. Defendant Piedmont subsequently merged with the USAir corporation.

rejected Piedmont's pretextual excuses for refusing to hire McDonald, and awarded McDonald compensatory damages in the amount of $2,226,920.00 for breach of the statutory duty. This sum represented the difference between Mr. McDonald's projected lifetime earnings and benefits at Air Berlin, the non-certificated carrier which employed him after his rejection by Piedmont, and those he would have received had Piedmont complied with the law by offering him a job. A final judgment in the case was entered on March 30, 1990.

Significantly, this Court had rejected at trial plaintiff's request for an instruction apprising the jury that it could compel the defendant to hire Mr. McDonald, reasoning that the equitable remedy of "reinstatement", or compelled hiring, would not be granted when an adequate remedy at law existed in the form of money damages, capable of making plaintiff whole. Although defendant disputes the point, the Court believes that the plaintiff took an adequate objection to the Court's failure so to charge the jury. *See* Ex. K to Kohn Affidavit at p. 717.

Defendant then appealed to the United States Court of Appeals for the Second Circuit. The plaintiff cross-appealed, but the Court of Appeals dismissed the cross-appeal for failure to comply with certain procedural requirements relating to the CAMP[2] program. Ex. D to Kohn Affidavit. By order dated April 11, 1991, a panel of that Court affirmed the finding of liability, but reversed on damages. *McDonald v. Piedmont Aviation, Inc.*, 930 F.2d 220 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991). The panel held in essence that the 72 month limitation period on temporary economic assistance payments contained in another subsection of the statute served to limit the damages recoverable for violation of the first right of hire; that is, although Piedmont should have hired the plaintiff, indefinitely, as a full-time pilot in January 1982, for a period limited only by compulsory retirement at age 60, he could recover lost wages damages only for the period from 1982 to 1988. *Id.* at 227. The Court of Appeals then issued the following instructions to this Court:

> "We affirm the jury's determination of liability but reverse the award of damages and remand for further proceedings. On remand, the district court may, in its discretion, compute damages for 72 months from the evidence given by Daniel W. Akins, McDonald's expert, which the jury credited, and use the remittitur device to order a new trial on damages unless the plaintiff accepts the reduced sum, as calculated for the allowable 72 months". *Id.*

McDonald then petitioned the Supreme Court of the United States for a writ of *certiorari.* By order dated November 18, 1991, that Court denied the petition. Ex. G to Kohn Affidavit.

On remand to this Court, the plaintiff now moves for additional relief, including, in the alternative, an order directing the defendant to hire McDonald, a new trial on damages or restoration of the full jury verdict. The defendant opposes the motion, contending that this Court must enter judgment against it for damages, limited to the allowable 72 month period, in accordance with the mandate of the Court of Appeals. These points will be discussed *seriatim.*

■ Plaintiff's principal argument to this Court in support of reinstating the full jury verdict is that the Court of Appeals' interpretation of the statute conflicts with the method of statutory interpretation used by the Supreme Court in *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), decided after the decision in *McDonald.* The *Gwinnett* Court held that damages were available to redress a violation of Title IX of the Civil Rights Act, stating in pertinent part that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute". *Id.* at 1038. McDonald argues that

---

**2.** This rather infelicitous acronym stands for  "Civil Appeals Management Plan".

this holding implicitly disapproves the Court of Appeals' finding that compensatory damages for denial of the first right of hire are limited to a maximum of 72 months. This Court agrees.

In advancing this argument, McDonald also points out that the District Court opinion which our Court of Appeals quoted to support its construction of the relevant subsections of the statute has since been reversed. *Crocker v. Piedmont Aviation, Inc.,* 741 F.Supp. 241 (D.D.C.1989), *rev'd,* 933 F.2d 1024 (D.C.Cir.1991). Although *Crocker* involved the question of whether a pilot's subsequent employment by a noncertificated carrier extinguished his first right of hire by a covered carrier, the relationship between the remedies contained in § 1552, the Employee Protection Program of the ADA, was a critical issue in that litigation. Addressing the argument which found favor with the Second Circuit in *McDonald,* e.g. that the 72 month limitation period on monthly assistance payments, contained in one subsection of § 1552, served to delimit the first right of hire, contained in another subsection of § 1552, the D.C. Circuit held that:

> "First, the EPP itself imposes no limits on the length of a protected employee's first-hire right and we do not believe the statutory restrictions on financial assistance should be engrafted on the first-hire provisions. In restricting the assistance payments, Congress acted to "limit[ ] as much as possible the potential expenditure of Government funds," . . . and to ensure that it created no disincentive to reemployment. . . . These concerns do not support similarly limiting a pilot's first hire right. The first-hire provisions impose no additional expense on the government and in fact were viewed by Congress as a means of relieving the financial burden created by the monthly assistance payments. . . . Further, the prospect of losing those rights upon employment by a noncertificated airline might discourage a displaced employee from seeking interim employment such as that taken by Crocker and prompt him instead to wait for an opportunity to use the first-hire right to obtain employment

with an established, formerly certificated airline. That result would frustrate the legislative intent to encourage reemployment of displaced protected employees and actually increase the number of monthly payments, thereby exacerbating the drain on the public fisc. For these reasons we reject the district court's conclusion that the financial assistance restrictions should be applied to the first-hire right". *Id.* at 1026–27 (citations omitted).

In two footnotes, the *Crocker* panel also reasoned that the *absence* of explicit statutory restrictions on the first-hire right, considered in light of "the express statutory [time] restrictions on the financial assistance benefits", supported its result, *id.* at 1026 n. 3, 'and noted its apparent conflict with our Court of Appeals. *Id.* at 1027 n. 4.

The *Crocker* court's reasoning, McDonald contends, is also consistent with the Supreme Court's opinion in *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). In that case, a unanimous Court held that the legislative veto provision of the EPP was severable from the remainder of the program. *Id.* at 697, 107 S.Ct. at 1486. The Court's analysis of the statute heavily stressed the disjunctive nature of the remedial provisions contained in the EPP:

> "The *independent functioning* of the Act's first-hire provisions stands in contrast to the important role of the Secretary in the [72 month] monthly assistance program". *Alaska Airlines,* 480 U.S. at 688 n. 10, 107 S.Ct. at 1482 n. 10 (emphasis added).

. . . . .

> "Petitioners argue that the two portions of the EPP are tightly linked, implying that if the veto was necessary to one, it was necessary to the enactment of both. The two components were related in that the right of first hire was predicted to "decrease the cash payments required under the program," S.Rep. No. 95–631, p. 116, and the Act conditions the receipt of monthly assistance payments on cooperation with the Secretary in seeking oth-

er employment, § 43(d)(2). But this is evidence that the monthly assistance program was regarded as the second line of attack, not that the right of first hire could not stand alone. As illustrated by the current inactive status of the compensation program, the first-hire provision is capable of serving as the sole means of employee protection". *Id.* at 694 n. 18, 107 S.Ct. at 1485 n. 18. *See also Long v. Trans World Airlines, Inc.,* 913 F.2d 1262, 1266 n. 2 (7th Cir.1990) (contrasting the two provisions and stating that "the absence of a similar qualification in the Employee Protection Program's first-hire provisions further suggests that Congress intended them to serve a broader remedial purpose"); *Long v. Trans World Airlines,* 761 F.Supp. 1320, 1330 n. 13 (N.D.Ill.1991) ("Here, where a private cause of action has been judicially implied, *Long,* 913 F.2d at 1267, and *where the statute thus reflects no intent to limit the nature of damages ...*") (emphasis added).

■ Powerful though these arguments are, it is this Court's duty to implement the mandate of the Court of Appeals. Similarly, the Court is without authority at this time to order the defendant to hire Mr. McDonald. At our initial trial, this Court ruled that this equitable remedy was unavailable to the plaintiff, since the Court believed at that time, and found, that there was an adequate remedy at law. The plaintiff took a proper exception to this ruling, but thereafter lost his right to appeal for technical non-compliance with the CAMP program.

As the case stood after trial in the District Court, there was no reviewable error, because the plaintiff *did* have an adequate remedy at law. Monetary damages are an adequate remedy at law when the effect of awarding such damage would have placed the injured person in the same position as he would have been, insofar as money can do so, if his statutory rights had been honored. *Racich v. Celotex Corp.,* 887 F.2d 393, 396 (2d Cir.1989) ("... compensatory damages are designed to 'have the wrongdoer make the victim whole', com-

mensurate with the loss or injury actually sustained ..."); *William W. Wrigley, Jr., Co. v. Waters,* 890 F.2d 594, 604 (2d Cir. 1989) (same). *Cf. Texas & Pacific Railroad Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) ("A disregard of the command of a statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover damages from the party in default is implied, according to a doctrine of the common law ...").

What position would this be? If hired, our jury found that McDonald would have worked until age 60 at the foreseeable salary and pension increases of a Piedmont pilot. Its verdict represents the present value of his earnings and benefits less the earnings and benefits to be received from Air Berlin.[3] Clearly, as a practical matter, once hired by Piedmont by Court order, McDonald would have become one of a large army of pilots covered by a collective bargaining agreement which included respect for job seniority, and discharge only for disability or cause, with full access to grievance procedures. As the jury found, once so protected he would have worked not for 72 months, but until age 60.

■ Had the Court known that compensatory damages would be limited to 72 months, we would have been required by the facts of the case to find that there was *no* adequate remedy at law, and the equitable remedy of job "reinstatement" should have been ordered. Equitable relief ought not to be denied except where there is a prompt, fair and full remedy at law. *E.g., Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917–18 (2d Cir.1986).

Based upon what we know now (and at least in theory should have known then) this Court would certainly order Piedmont (and its successor USAir) to hire McDonald as of the date on which it breached its statutory duty to do so, as our jury found. The Court declines to do so now, based on a perceived lack of power. Our hint that a motion should be made in the Court of Appeals to recall the mandate has fallen,

---

**3.** Air Berlin has since folded, due to German Reunification, an event not foreseeable at trial.

apparently, on deaf ears. This Court will comply with the mandate.

Counsel have been unable to agree on the proper amount of a damage award for the allowable 72 month period. The Court finds that to comply with the Court of Appeals' mandate, the Final Average Earnings as found by Mr. Akins must be calculated based on Mr. McDonald's projected earnings between the years 1985 and 1987, when his hypothetical career with Piedmont is now assumed to have abruptly ended.[4] Thus, the Court concludes, with the defendant, that Mr. McDonald's computed damages must amount to $409,459.70.[5] Counsel agree that prejudgment interest through April 14, 1992 equals $61,566.58. The Clerk shall enter a final judgment in the amount of $471,026.20, together with interest on 409,459.70 through June 4, 1992 of $3,696.50, amounting to a total judgment of $474,722.78 and costs to be taxed.

SO ORDERED.

---

**4.** It is monstrous to assume an airline would fire a pilot after six years, assuming adequate job performance, simply because his employment occurred under a statute good only for six years. Conversely, if his performance were unsatisfactory, subject to the union grievance procedure, he could have been fired at any time.

**5.** It is useless to phrase our order in the form of a "remittitur". Under the existing situation of the case, on retrial, a jury could award no more, and no less.